Commonwealth ex rel. DiDio, Appellant, *v.* Baldi.

Argued March 25, 1954. Before Ross, Gunther, Wright, Woodside and Ervin, JJ. (Rhodes, P. J. and Hirt, J., absent).

*Thomas D. McBride*, for appellant.

*Samuel Dash*, Assistant District Attorney, with him *Michael von Moschzisker*, First Assistant District Attorney and *Richardson Dilworth*, District Attorney, for appellee.

OPINION BY WRIGHT, J., July 13, 1954:

On April 7, 1952, following a complaint that Paul DiDio was conducting a lottery, police officers entered his home and made a search in his presence. In a flower vase they found a black cloth bag containing the following numbers paraphernalia: 2674 straight numbers plays, 62 lead and lead parley plays, a carbon sheet with impressions of numbers plays, and a tally sheet showing the names and numbers of various players. The officers did not have either a search warrant or a warrant of arrest. DiDio was taken into custody and booked at the police station on the charge of being concerned in the conduct of a lottery and establishing a gambling place. See Sections 601 and 605 of The Penal Code, Act of June 24, 1939, P. L. 872, 18 PS 4601 and 4605. While not material to our present decision, it appears that DiDio was furnished with a certificate of the charge.[1] On the following morning before a magistrate an information was made and a hearing took place. The paraphernalia seized was exhibited to the magistrate as evidence, and DiDio was held in bail for court. Instead of furnishing bail, he applied to the Court of Common Pleas for a writ of habeas corpus. A writ was issued and bail fixed pending its disposition. Evidence was heard by the lower court and the writ was then discharged. This appeal followed.

---

[1] Required if requested. See the Act of 1915, P. L. 76, 19 P.S. 54.

The Commonwealth has moved to quash the appeal on the ground that the order of the court below is interlocutory in nature. Appellant relies principally upon Section 7 of the Act of May 25, 1951, P. L. 415, 12 PS 1907, which provides in pertinent part as follows: "From the decision of any judge upon any petition for a writ of habeas corpus, or upon any order made pursuant to a hearing on the writ, an appeal may be taken as in other cases". The Commonwealth answers that the statutory provision quoted was intended solely to change the rule enunciated in *Commonwealth ex rel. Mattox v. Superintendent of County Prison*, 152 Pa. Superior Ct. 167, 31 A. 2d 576, in which we held that appeals in habeas corpus cases were in the nature of certiorari and brought up for review only the regularity of the record. We do not express an opinion with regard to an appeal which raises only questions which may well be determined at trial, such as the sufficiency of the evidence before the magistrate. See *Commonwealth ex rel. Stingel v. Hess*, 154 Pa. Superior Ct. 639, 36 A. 2d 848. In the case at bar, however, appellant has also raised the fundamental contention that the magistrate had no jurisdiction of his person, and we will therefore consider the appeal on its merits.

Appellant's contentions are as follows: (1) "Where a person is illegally arrested and involuntarily brought physically before a magistrate and complaint is made against him but no copy thereof is served upon him nor any judicial process issued against him, has the magistrate jurisdiction of his person for the purpose of holding a preliminary hearing of the complaint"; (2) "On the above-stated facts have the preliminary proceedings been conducted according to law"; (3) "Where the only evidence received by the magistrate at the preliminary hearing and by the court on Habeas Corpus

was obtained in violation of relator's right against self-incrimination guaranteed by Article I, Section 9 of the Pennsylvania Constitution, was the evidence sufficient to hold him to answer".

The learned judge of the court below assumed that the offense charged (a misdemeanor) was not committed in the presence of the arresting officers,[2] and held that appellant's arrest without a warrant was therefore illegal. He adopted the position of the Commonwealth, however, that the illegal arrest did not af-fect the power of the magistrate to conduct a preliminary hearing and to commit appellant for action by the grand jury. Appellant concedes that the defect of which he complains could have readily been cured by the issuance of a warrant after the information was made. The only purpose served by a warrant is to bring the defendant before the magistrate. We are in agreement that its issuance is not required so far as the validity of the magistrate's hearing is concerned, when the defendant has been arrested, no matter how illegally, and is already physically present. The appellate court cases relied upon by appellant[3] actually involve situations in which there was either no information or the information was insufficient.

It is well settled in Pennsylvania that the manner in which a person accused of crime is brought within the Commonwealth does not affect the jurisdiction of the court. In *Commonwealth v. Kenney*, 80 Pa. Superior Ct. 418, we refused to countenance a contention that the lower court did not have jurisdiction because

---

[2] We do not decide this question.

[3] *Commonwealth v. Gelbert*, 170 Pa. 426, 32 A. 1091; *Commonwealth v. Brennan*, 193 Pa. 567, 44 A. 498; *Commonwealth v. Mallini*, 214 Pa. 50, 63 A. 414; *Commonwealth v. Dingman*, 26 Pa. Superior Ct. 615; *Commonwealth v. Hans*, 68 Pa. Superior Ct. 275; *Commonwealth v. Keegan*, 70 Pa. Superior Ct. 436.

the defendant had been improperly extradited. And in *Commonwealth ex rel. Master v. Baldi,* 166 Pa. Superior Ct. 413, 72 A. 2d 150, we held that the seizure of a defendant in Maryland and his alleged forcible return to Pennsylvania did not constitute a violation of due process. As early as 1851, it was held by the Supreme Court in *Dows' Case,* 18 Pa. 37, that a defendant was not entitled to discharge because of the mode of his original arrest. Mr. Chief Justice Gibson said that "want of authority for the prisoners arrest cannot protect him from prosecution". It should also be noted that the federal cases have uniformly followed the principle that acquisition of jurisdiction by forcible abduction, irregular extradition, or illegal arrest, does not constitute a violation of due process: *Ker v. Illinois,* 119 U. S. 436 (1886); *Mahon v. Justice,* 127 U. S. 700 (1888); *Pettibone v. Nichols,* 203 U. S. 192 (1906); and *Frisbie v. Collins,* 342 U. S. 519 (1952).

In England it has been held that a magistrate has jurisdiction to conduct a preliminary examination regardless of the manner in which the prisoner was brought before him, so long as the crime charged is within the jurisdiction of the magistrate's court, and the prisoner is physically present. In *The Queen v. Hughes,* 4Q.B.D. 614, the court said: "The illegality of the warrant and of the arrest did not however affect the jurisdiction of the justices to hear the charge . . .". The same rule obtains in Canada: *Rex v. Isbell,* 51 C.C.C. 363. In this country, the weight of authority is in accord. In *Rose v. McKean,* 76 N.Y.S. 2d 391, the court found that the arrest had been illegal, but stated: "Based upon such alleged (illegal) arrest, petitioner contends the Magistrate was without jurisdiction to proceed further in the matter. I hold that, since the Magistrate had jurisdiction of the subject matter and that petitioner-defendant was physically before him, the

manner in which the arrest was made is immaterial in determining the court's jurisdiction to proceed. The general rule has been that it is no defense to a criminal prosecution that the defendant has been brought before the court by an illegal arrest". In *People v. Guthman*, 211 Ill. App. 373, it was said: "Where one is arrested and brought before a magistrate without a warrant, nothing further is required to be done to give him jurisdiction, but a written complaint or information against the defendant, setting out the offense, is necessary". Similar decisions are found in other jurisdictions,[4] and text writers consistently lend their support to the proposition.[5]

Appellant urges that there is an analogy between a warrant of arrest in criminal cases and service of process in civil cases. But the action of the magistrate in holding a defendant for court is not a personal judgment. It is merely an order detaining for grand jury action a defendant who subsequently receives ample notice of his trial and is afforded full opportunity to defend. Appellant's argument in this connection was expressly dealt with in the case of *In re Johnson*, 167 U. S. 120, where the Supreme Court held that an arrest without a warrant does not affect subsequent proceedings conducted in accordance with the law. The court said: "Although it has been frequently held that if a defendant in a civil case be brought within the process of the court by a trick or device, the service

---

[4] *Ex parte Thomas*, 100 Ala. 101, 13 So. 517; *People v. Groves*, 63 Cal. App. 709, 219 P. 1033; *State v. May*, 57 Kan. 428, 46 P. 709; *Commonwealth v. Conlin*, 184 Mass. 195, 68 N.E. 207; *State v. Chandler*, 158 Minn. 447, 197 N.W. 847; *Cohoe v. State*, 79 Neb. 811, 113 N.W. 532; *State v. Melvern*, 32 Wash. 7, 72 P. 489; *Ford v. U. S.*, 273 U. S. 593, 10 F. 2d 339.

[5] Crocker on Sheriffs (2d Ed) p. 35; Alexander on the Law of Arrest p. 209; Orfield on Criminal Procedure p. 30.

will be set aside . . . in criminal cases the interests of the public override that which is, after all, a mere privilege from arrest."

Appellant's second position is that he is entitled to a discharge because of the express provisions of Section 2 of the Habeas Corpus Act of July 1, 1937, P. L. 2664. This section reads as follows: "Such examination into the facts of the case shall include an examination by the judge into all the proceedings held and evidence produced before a judge, magistrate, justice of the peace, or other officer sitting as a committing judge or magistrate, and if such proceedings shall, after inquiry, be deemed to have been conducted not in accordance with law, or the evidence deemed insufficient, the prisoner shall be discharged". Appellant argues that the proceedings are not conducted in accordance with law if the arrest is illegal. We are not in accord with this interpretation. The arrest is something prior to and apart from the proceedings held and evidence produced, which constitute the subject of inquiry prescribed by the Act. We approve the following statement by Judge FLOOD of the court below: "Everything in the section indicates that it applies to the preliminary hearing before the magistrate to which it specifically refers, and not to the prior arrest, about which it says nothing".

Appellant's final contention is that "the search for evidence and the seizure of papers of purely evidentiary value and the use thereof as a basis for warrant or as evidence on trial violates . . . the right against self-incrimination". We have already ruled that numbers slips and other paraphernalia of the game are gambling devices and subject to seizure with or without warrant: *Commonwealth v. Bruno and Perna,* 176 Pa. Superior Ct. 115, 106 A. 2d 905. Conceding arguendo that they are papers of purely evidentiary value, there

is no distinction so far as admissibility is concerned between papers and other articles illegally seized. While a defendant cannot be forced to produce his books and papers, *Logan v. Pennsylvania Railroad*, 132 Pa. 403, 19 A. 137; *Boyle v. Smithman*, 146 Pa. 255, 23 A. 397; *Annenberg v. Roberts*, 333 Pa. 203, 2 A. 2d 612, their offer in evidence from the possession of the Commonwealth, however secured, does not compel the defendant to give evidence against himself. The privilege under consideration affords protection from disclosure sought by legal process against a person as a witness: 4 Wigmore on Evidence, 2nd Ed. page 864, Section 2263. In the words of Mr. Justice (now Chief Justice) STERN in *Commonwealth v. Musto*, 348 Pa. 300, 35 A. 2d 307, "The purpose of the constitutional provision is to prohibit the compulsory oral examination of the prisoner either before or at trial,—to prevent his being required to incriminate himself by speech or the equivalent of speech". And see *Commonwealth v. Statti*, 166 Pa. Superior Ct. 577, 73 A. 2d 688. The leading case of *Commonwealth v. Dabbierio*, 290 Pa. 174, 138 A. 679, clearly demonstrates that the offering in evidence of articles wrongfully obtained does not in any sense compel a defendant to give evidence against himself. It has been consistently held in this Commonwealth that the admissibility of evidence is not affected by the illegality of the means through which it has been obtained. See *Commonwealth v. Dugan*, 143 Pa. Superior Ct. 383, 18 A. 2d 84; *Commonwealth v. Agoston*, 364 Pa. 464, 72 A. 2d 525; *Commonwealth v. Rich*, 174 Pa. Superior Ct. 174, 100 A. 2d 144.

The order of the court below is affirmed.