HAWTHORNE, Justice.
 

 Clifford T. Green, charged under R.S. 40:962 with the crime of unlawfully selling narcotics, has appealed from his conviction and sentence to 10 years in the state penitentiary.
 

 For reversal of the conviction he relies on a number of hills of exception.
 
 [1]
 
 For a proper understanding of the issues presented by these bills, we shall first give a resume of the facts and circumstances as related in the briefs filed here and the judge’s per curianas.
 
 [2]
 

 
 *87
 
 The Calcasieu sheriff’s department became concerned over an increase in the unlawful sale of narcotic drugs in the Negro section of Lake Charles. In an effort to locate the sources of the drugs unlawfully Sold and to learn the identity of the sellers, a deputy sheriff made contact with Robert Boyd, who had previously assisted the sheriff’s department in the investigation of criminal activities, and asked Boyd to act as an undercover agent in the narcotics investigation — that is, to “make a buy” of narcotics with marked money supplied to him by the sheriff’s department. Boyd got in touch with two men named Higgins and LaGrange, the former of whom was known to Boyd as a user of narcotics. Neither LaGrange nor Higgins was aware that Boyd was acting as an undercover agent. To arrange a sale LaGrange telephoned the defendant Clifford T. Green, a Negro, who at that time was a registered pharmacist employed at a hospital and in this position had access to narcotic drugs. Pursuant to the telephone conversation the defendant Green brought narcotics on June 18, 1961, to LaGrange’s home, where he was met by Boyd, Higgins, and LaGrange. On that day at about noon the sale was consummated at the home of LaGrange; the defendant at that time delivered to Higgins some 30 tablets of the narcotic drug dilaudid and was paid for the tablets with marked money which had been furnished to Boyd by the sheriff’s department.
 

 Boyd reported this purchase to the sheriff’s office, and on the same day, June 18, deputy sheriffs went to Green’s home and arrested him without a warrant. He was taken to the sheriff’s office by these officers, and there was requested to empty his billfold, and he did so. The contents of the billfold included currency which had been previously marked and listed by the sheriff’s office and which had been used in making the purchase of the narcotics in this case.
 

 On June 20, 1961, a deputy sheriff executed what purported to be an affidavit charging the defendant with the unlawful sale of narcotics. This affidavit was signed by the officer in the district attorney’s office and subsequently taken by someone to the district judge. The district judge, who informs us that the signature of this officer was well known to him, issued a warrant for the arrest of the defendant, in which the amount of the bail bond was specified. The defendant had been kept in jail from the time he was taken into custody on June 18 to the time this warrant was executed on June 20. The State says that since the defendant was already under arrest and in custody, its only purpose in causing this warrant to issue was to fix the amount of his bail. After issuance of this warrant, the defendant executed the bail bond and was released from custody.
 

 On July 24, 1961, a bill of information was filed by the district attorney under which defendant was tried and convicted
 

 
 *89
 

 Bill of Exception No. 2.
 

 The first bill for our consideration, Bill of Exception No. 2, was taken to the trial judge’s overruling of a motion to quash the bill of information. One of the grounds urged by the accused is that the warrant of June 20 issued for his arrest was illegal because it was not signed by the deputy sheriff in the presence of the judge and no oath was administered to the deputy.
 

 Even if we should agree with the accused that the warrant of arrest issued on June 20 was illegal, this argument would be of no avail to him, for an unlawful arrest, of itself, is “ * * * no bar to a prosecution on a subsequent indictment or information, by which’ the court acquires jurisdiction over the person of the defendant”. 15 Am.Jur., Criminal Law, sec. 317, p. 15.
 

 “ * * * the illegal arrest of one charged with crime is no bar to his prosecution if all other elements necessary to give a court jurisdiction to try accused are present, a conviction in such a case being unaffected by such unlawful arrest. * * * ” 22 C.J.S. Criminal Law § 144, at p. 383.
 

 “If a defendant is physically before the court upon a complaint or indictment, either because he is held in custody after an arrest or because he has appeared in person after giving bail, the invalidity of the original arrest is immaterial, even though seasonably raised, as regards the jurisdiction of the court to proceed with the case. * * * ” 4 Wharton’s Criminal Law and Procedure (1957), sec. 1484, p. 43.
 

 So far as we can ascertain, there is no Louisiana case upon this point, but the rule just stated has been recognized and approved throughout the United States. Ker v. Illinois, 119 U.S. 436, 440, 7 S.Ct. 225, 30 L.Ed. 421; In re Johnson, 167 U.S. 120, 17 S.Ct. 735, 42 L.Ed. 103; Rose v. McKean, 190 Misc. 982, 76 N.Y.S.2d 391; Commonwealth v. Gorman, 288 Mass. 294, 192 N.E. 618, 96 A.L.R. 977; State ex rel. Schwanke v. Utecht, 233 Minn. 434, 47 N.W.2d 99; State ex rel. Farrington v. Rigg, 259 Minn. 483, 107 N.W.2d 841; State v. Zdovc, 106 Ohio App. 481, 151 N.E.2d 672; State v. Boynton, 143 Me. 313, 62 A.2d 182; State v. Poynter, 70 Idaho 438, 220 P.2d 386; Cofer v. Oklahoma City (Okl.Cr.), 277 P.2d 204; State v. Ryan, 48 Wash.2d 304, 293 P.2d 399; Commonwealth ex rel. DiDio v. Baldi, 176 Pa.Super. 119, 106 A.2d 910; Wright v. Maryland, 222 Md. 242, 159 A.2d 636.
 

 The motion to quash next urges that the bill of information under which the accused was prosecuted was vague and indefinite, failed to inform him of the nature and cause of the accusation against him, and stated nothing more than a conclusion without giving any facts or circumstances
 
 *91
 
 upon which a conclusion could be based. On motion of the State the court permitted the information to be amended to meet this objection, and the amended information, with the added portions italicized, reads as follows:
 

 "Clifford T. Green at the Parish of Calcasieu on or about the 18th day of June in the year of our Lord, One Thousand Nine Hundred and sixty one; (1961),
 
 at approximately 12 o’clock noon at the home of Harold LaGrange, 1312 Belden Street, Lake Charles, Louisiana,
 
 Did unlawfully sell
 
 to James L. Higgins
 
 a certain narcotic drug, viz: 30 dilaudid tablets %2 grain tablets, in violation of R.S. 40:962 * * (Italics ours.)
 

 This amendment of the bill of information was permitted by the court on December 4, 1961, and the trial of the accused actually began on March 26, 1962. The ruling of the court permitting the amendment was correct under R.S. 15 :253, which provides: “ * * * The court may at any time before, during or after the trial amend the indictment in respect to any defect, imperfection or omission in form or substance or of any variance with the evidence. * * * ”
 

 Bill of Exception No. 3.
 

 Bill of Exception No. 3 was reserved to the ruling of the court permitting the amendment of the information as set out in our discussion of Bill No. 2. This bill is without merit for the reasons given there.
 

 Bill of Exception No. 4.
 

 Prior to trial the defendant, alleging the illegality of his arrest, filed a motion and rule to cancel and set aside his bail bond. This motion to cancel and set aside the bond was denied, and Bill of Exception No. 4 was reserved.
 

 The bail bond in the instant case served to insure the appearance of the defendant before the district court at such times as might be fixed by that court. Since the defendant appeared at such times as were fixed, was tried and convicted under a bill of information charging the illegal sale of narcotics, and was sentenced to imprisonment at hard labor for 10 years, his conviction and sentence have the effect under the law of releasing the surety on the bond from any responsibility. See R.S. 15 :110. Under these circumstances this bill presents nothing for our determination on this appeal, especially since the State has not sought the forfeiture of the bond and the accused is now in actual custody under the sentence imposed. R.S. 15:85.
 

 Bills of Exception Nos. 5 and 6.
 

 These bills were taken to the overruling of objections made by counsel for the defendant to his arraignment, to the fixing of his case for trial, and to the trial itself. The basis of these objections was the al
 
 *93
 
 leged illegality of the arrest. As we have pointed out in our discussion of Bill No. 2, the accused was prosecuted under a bill of information filed by the district attorney, and what we said there is applicable here. These bills are therefore without merit.
 

 Bill of Exception No. 7.
 

 On voir dire examination a prospective juror was asked by the district attorney: “Mr. Fontenot, we have been referring to this term ‘reasonable doubt’ in explaining and talking about the State’s burden of proof. Now, as we had mentioned, the State has to prove the case beyond a reasonable doubt, and at the conclusion of the trial the Judge will tell you what the law means by the term ‘reasonable doubt’, and if the Judge instructs you that a reasonable doubt is not just a possible doubt or a frivolous doubt but means a real and substantial doubt a doubt such as you would give a good reason for having, would you be willing to accept this instruction and apply it to this case ?” Counsel for the accused objected to this question on the ground that the district attorney was including in his question an interpretation of the law. The objection was overruled, and this bill reserved.
 

 The trial judge in his per curiam states that the question fairly covers the essential meaning of “reasonable doubt”. The judge further states that it was his understanding that the question in essence was whether or not the prospective juror would accept the instruction of the court on “reasonable doubt”.
 

 We do not find the question objectionable. It contains a correct statement of the law, State v. Jefferson, 43 La.Ann. 995, 10 So. 199, and the State had a right to determine whether the juror would fulfill his obligation to accept the law as instructed by the court. Moreover, the extent to which counsel may examine jurors on their voir dire rests largely in the sound discretion of the trial judge, whose ruling will not be disturbed save in cases of clear abuse. State v. Matassa, 222 La. 363, 62 So.2d 609; State v. Williams, 230 La. 1059, 89 So.2d 898, and authorities cited. Counsel has not shown any abuse of the judge’s discretion in this matter.
 

 Bill of Exception No. 9.
 

 A deputy sheriff, called as a witness for the State, gave the following testimony without objection on direct examination:
 

 “Q. Did any particular criminal activity out of the ordinary come to your attention about that time?
 

 “A. Yes, sir. It came to my attention that there was heavy increase in narcotics traffic in the colored section of Lake Charles.”
 

 Fie was then asked: “And what was your information concerning this ?” Counsel for
 
 *95
 
 the accused objected to this question on the ground that the information sought was hearsay and prejudicial. The objection was overruled, and Bill No. 9 was reserved.
 

 The bill does not disclose the witness’ answer, but the trial judge in his per curiam informs us that the witness answered: “My information was that there was heavy stuff being used and was being dispensed in the colored section of Lake Chaides.”
 

 In his per curiam the trial judge says that the State’s question was asked “for the purpose of establishing generally the information that motivated any action by the sheriff’s department to investigate and possibly detect the commisssion of a crime”.
 

 The substance of the. answer to the question objected to had already been given by the witness without objection in his answer to the previous question. It is well settled that objection to the admissibility of testimony comes too late after the testimony has gone to the jury. State v. Rollin, 136 La. 78, 66 So. 545; State v. Foster, 164 La. 813, 114 So. 696; State v. Carter, 167 La. 1080, 120 So. 864.
 

 Moreover, it seems to be well settled that an officer of the law may testify generally that acting upon information or complaint he did certain things, but may not give the substance of the information received. This court in State v. Kimble, 214 La. 58, 36 So.2d 637, quoted with appx-oval the following extract from Smith v. United States, 70 App.D.C. 225, 105 F.2d 778, 779: “The rule seems to be that, while an officer may testify before a jxxry that, acting upon information, he did certain things, he may not go further and testify as to precisely what he was told about the particular place or the pax-ticular pex-son.” In the instant case the officer was giving the backgroxxnd of the investigation and was not testifying as to any particular place or any particular person, and his answer did not tend to connect the accused with any criminal activity in the narcotics traffic or in any other field. Even if we concede that the testimony was hearsay, its admission would offer no groxxnd for reversal because no prejxxdice resulted to the sxxbstantial rights of the accused. R.S. 15:557.
 

 Bills of Exception Nos. 10 and 11.
 

 These bills were reserved to the court’s ruling permitting the witness Boyd, who had acted as an undercover agent and who was present when the sale of the narcotics was made, to describe how he and Higgins had tested the pills by injecting a solution made with the tablets into their ax-ms to determine whether the pills were narcotics. Since all of this took place in the presence of the defendant, at the place where the sale was made, and right after
 
 *97
 
 delivery of the pills, it was obviously a part of the one continuous transaction. The trial judge correctly considered this evidence as res gestae; and what forms any part of the res gestae is always admissible in evidence. R.S. 15:447, 448.
 

 Bills of Exception Nos. 12 Through 16.
 

 These bills were reserved when the trial judge over the defendant’s objection permitted the State to introduce into evidence the marked money which defendant had produced from his billfold after being taken into custody on June 18, and also to introduce two statements, made by him, one on June 18 and the other on June 19. It is counsel’s contention that at the time this money was taken from defendant and the statements given, defendant had not been legally arrested, and that under the holding of the United States Supreme Court in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, this evidence was inadmissible. He does not contend that the two statements were not freely and voluntarily made.
 

 The trial judge in one of his per curiams tells us that the accused had been arrested on June 18 without a warrant, before the money was produced from his billfold and also before the two statements were made; and he points out that under the laws of this state an arrest without a warrant is permitted in certain circumstances, one of which is that “Any peace officer may, without a warrant, arrest a person * * * When he has reasonable cause to believe that a felony had been committed and reasonable cause to believe that such person has committed it”. R.S. 15:60(4).
 

 As to the marked money, incriminating articles may be taken from a person arrested, under R.S. 15:68 which provides: “Any person making an arrest shall take from the person arrested, all offensive weapons or incriminating articles which he may have about his person and must deliver them to the sheriff of the parish * *
 

 It follows that if the arrest of June 18 was legal, defendant’s complaints are without merit.
 

 For the defendant to prevail in his argument that the arrest on June 18 was illegal, the officer making the arrest must, under the laws of this state, have made it without “reasonable cause” to believe that a felony had been committed and without “reasonable cause” to believe that defendant had committed it. The legality of an arrest is a question of law, which, of course, must be determined from the facts and circumstances surrounding the arrest; and it is well settled that the lawfulness of an arrest by police officers is to be determined by reference to the law of the state in which the arrest occurs. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210;
 
 *99
 
 Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332.
 

 This court has no way of determining on appeal whether an arrest made without a warrant was made without reasonable cause unless the facts and circumstances attendant upon the arrest are before us, and these facts and circumstances must be incorporated in or attached to bills of exception, under the well settled rule that evidence can be brought before the Supreme Court in criminal cases only by annexing it to and making it a part of a bill of exception timely reserved. State v. Honeycutt, 218 La. 362, 49 So.2d 610; State v. LeBleu, 203 La. 337, 14 So.2d 17; State v. Taylor, 192 La. 653, 188 So. 731; State v. Jouvet, 224 La. 15, 68 So.2d 741. Moreover, the burden is upon the accused to prepare his bills of exception in a manner provided by the laws and statutes of this state, so as to enable this court to determine whether the trial judge erred in his rulings. State v. Russell, 167 La. 1010, 120 So. 629; see also State v. Todd, 173 La. 23, 136 So. 76; State v. Champagne, 160 La. 47, 106 So. 670. Defendant has not attached to the bills under consideration here, or to any of his other bills, the evidence showing the facts and circumstances leading to the June 18 arrest without a warrant, and his counsel admitted in argument before this court that the facts and circumstances of the arrest were not revealed in the transcript. R.S. 15 :498 provides that the bill of exception is grounded upon the objection made to the ruling of the court on some purely incidental question arising during the progress of the cause, and involves the correctness of the conclusions of the court drawn from the
 
 facts
 
 recited in the bill. R.S. 15:500 states: “The bill of exceptions must show the circumstances under which and the evidence upon which the ruling complained of is based * *
 

 In the instant case the defendant, so far as we can ascertain, made no request or effort to have taken and attached to his bills the testimony showing the facts and circumstances of his arrest without a warrant on June 18, and we do not know even whether any testimony or evidence on this point was adduced during the trial. Moreover, it is significant to note, as shown by the trial judge’s per curiam to Bill No. 2, that when the State sought to introduce evidence to show reasonable grounds for this arrest, counsel for the accused objected to the admission of this evidence.
 
 [3]
 

 In the absence of any testimony or other evidence relating to the reasonableness of the arrest of June 18 without a warrant by a deputy sheriff or peace officer, this court cannot presume that the
 
 *101
 
 arrest was illegal, and cannot accept the conclusion of the defendant that it was. There was no burden on the State to adduce evidence or proof showing the legality of the arrest, for it could rely on the legal presumption that “public officers have done their duty”. This legal presumption relieves him in whose favor it exists from the necessity of any proof, though of course the presumption may nonetheless be destroyed by rebutting evidence. R.S. 15 :432.
 

 Bill of Exception No. 18.
 

 This bill was taken to the trial judge’s overruling of defendant’s motion for a mistrial made on the last day of the trial. The first ground of the motion was that a local newspaper’s report of the trial contained inaccuracies, and that since the jury had been allowed to separate, the newspaper report was available to the members of the jury and could have been read by them, with resultant prejudice to the accused.
 
 [4]
 
 The second ground of the motion was that a group of teen-age students was present in the courtroom, and that defendant was prejudiced by this.
 

 After counsel had made this motion, the jury was retired so that the motion could be argued before the judge. After argument the motion was overruled, and when the jury returned to the courtroom, the trial judge delivered the following special charge:
 

 “While you were retired from the courtroom a matter was brought before the Court in relation to publication of a news article in the Lake Charles American Press in the home edition of yesterday, March 28, 1962, which discussed certain alleged happenings, evidence and so forth, at this particular trial in which you are the jury. The Court wishes to remind each member of the jury that the oath which you have taken is to try this case solely on the evidence as adduced in this courtroom in the trial of the case and the law as the Court gives it to you, without consideration of any other matter which may or may not have been brought to your attention through newspaper reports or otherwise during the trial of this case. Your obligation is clear and strictly construed to try this case solely upon the evidence you hear in this courtroom and the law as the Court gives it to you, and you are instructed to disregard any newspaper comments that may have been made or may hereafter be made, or any other comments or matters brought to your attention outside of this particular courtroom in the trial of this case. The Court believes that each one of you has sworn that you could do that, and the Court believes that you will do that without prejudice to either the State or the de
 
 *103
 
 fendant by virtue of any comment made outside of this courtroom.”
 

 In his per curiam the judge says that “it was not shown that any member of the jury had read the article”. As to the presence of the teen-agers he states: “In connection with the presence in the audience, during part of the last day of the trial, of high school students, the Court is satisfied that these students were present merely to observe court proceedings. There were about 40 such students in the audience and they were orderly and attentive. * * *»
 

 The mere presence of teen-agers in the courtroom is no ground for a mistrial, for, as shown by the trial judge’s per curiam, there was nothing about their conduct which could in any way prejudice the rights of the accused. They had a right to be present as the trial of the accused was open to the public. Defendant’s argument, which is merely a vague allegation of possible prejudice, is not impressive, for in fact no prejudice has been shown.
 

 We think what was said in State v. Hoffman, 120 La. 949, 45 So. 951, disposes of defendant’s contention regarding the newspaper article:
 

 “During the trial, one of the local newspapers published an article commenting on the case. Defendant moved to discharge the jury because some of the jury might have read this publication, since they were permitted to separate. But on the trial of this motion defendant made no attempt to show that a single member of the jury had read, or even heard of, the publication. The door was open for defendant to make such proof, and his remedy was to make it. He cannot ask the court to assume the existence of a thing which he had the easy means of proving but did not prove.”
 

 In the Hoffman case the syllabus by the court reads:
 

 “Though the jury have been allowed to separate, the publication of comments upon the case by a local newspaper during the trial will not be ground for discharging the jury, in the absence of proof that the jurors, or some of them, actually read the comments, and were so impressed thereby as to be disqualified from further service on the jury.” See also State v. Snowden, 198 La. 1076, 5 So.2d 355.
 

 Under the circumstances which appear here, the accused has shown no prejudice, and the trial judge’s ruling on the motion was correct.
 

 Bill of Exception No. 19.
 

 This bill was taken to the trial judge’s refusal to give certain special charges requested by counsel for the defendant. Under R.S. 15 :390 the judge must give every requested charge that is wholly correct and wholly pertinent unless the matter contained in such charge has already been given
 
 *105
 
 or unless such charge requires qualification, limitation, or explanation.
 

 —Requested Special Charge No. 1.—
 

 In this requested special charge the court was asked to give instruction on the law regarding impeachment of a witness by evidence of conviction of crime. This requested charge contained the sentence: “ * * * it is the law of Louisiana that proof of a prior conviction of a felony is valid impeachment of that witness. * * * ” This is not a correct statement of the law, as proof of conviction of a felony does not of itself impeach the witness. The law is that evidence of conviction of a crime is admissible for the purpose of impeaching the credibility of the witness, R.S. 15 :495, and it is for the jury to decide whether it believes the witness. The first requested special charge was therefore properly refused.
 

 —Requested Special Charge No. 5.—
 

 By this requested special charge defendant sought to have emphasized to the jury that each juror must make up his mind separately and independently. The general instruction of the judge adequately covered the manner in which the jury should conduct its deliberations in reaching a verdict in the case, and defendant cites no law which entitles him to any special emphasis on the duty of a juror to reach his conclusion as to guilt or innocence separately from the other jurors. In denying a requested charge very similar, this court in State v. Murphy, 154 La. 190, 97 So. 397, cited by the trial judge, said:
 

 “The * * * charge was correctly refused as calculated to impress any juror with the idea that he should not listen to the arguments and views of his fellow jurymen, or be influenced thereby; when the contrary should be the case, if he is able to reconcile his own conception of the case, conscientiously, with that of his fellows.”
 

 —Requested Special Charge No. 8.—
 

 The defendant submitted this requested special charge on the law of entrapment because he preferred the layman’s approach of its language to the charge as given by the judge. The defendant admits that the judge’s instruction on entrapment is a correct version of the law, but contends that it is misleading. The law of entrapment is fully covered in the judge’s general charge, and we find it to be correct and not misleading. This requested charge was therefore properly refused:
 

 —Requested Special Charge No. 9.—
 

 In this requested special charge defendant sought to have the jury charged what sentence could be imposed under the law in the event of conviction for violation of the Uniform Narcotic Drug Act, under
 
 *107
 
 which defendant was being tried, and also charged that a person so convicted was without the benefit of parole, probation, or suspension of sentence.
 

 Under the law of this state the judge is required to charge the jury all the law applicable to the accused’s guilt or innocence of the crime charged, or any lesser crime included therein, in the light of. the evidence adduced. It is the duty of the jury in such cases to determine the guilt or innocence of the accused, but in the event of conviction it is the duty of the judge, and not the jury, to impose sentence. The fixing of the punishment for conviction is solely within the province of the judge, and is no concern of the jury except in capital cases where the jury may return a verdict of "guilty without capital punishment” and preclude the judge from imposing the death sentence. Therefore this requested special charge was not pertinent, and was correctly refused.
 

 —Requested Special Charges Nos. 11, 12, and 13.—
 

 In Requested Special Charge No. 11 defendant sought further instructions relating to the law applicable when entrapment is pleaded as a defense, asking the court to instruct the jury that since entrapment is claimed as a defense in this case, “the State must reasonably show that the defendant was previously a violator of the narcotics laws by his previous offenses”. As stated in our discussion of Special Charge No. 8, defendant concedes that the judge’s general charge, which is in the record, correctly instructs the jury on the law of entrapment. We agree that the judge’s charge was correct. Moreover, he properly refused Special Charge No. 11 since it does not correctly state the law. We know of no law which requires that when entrapment is claimed as a defense, the State must reasonably show by the defendant’s previous offenses that he was previously a violater of the law. In support of his argument counsel cites and relies on Dupuy v. Florida (Fla.App.1962), 141 So.2d 825, but we do not consider that that case supports this contention.
 

 Requested Special Charges Nos. 12 and 13 relate directly to the instruction sought in Special Charge No. 11, and constitute a further enlargement of the requested instructions on entrapment. What we have said about Special Charge No. 11 is applicable here, and the judge properly refused to give these two charges.
 

 —Requested Special Charge No. 14.—
 

 This special charge requested by the defendant reads as follows: “In this case if you believe that the State had a witness who had actually seen or participated in the transaction
 
 for
 
 which the accused is being tried, and failed to produce this witness to testify, you may reach the conclu
 
 *109
 
 sion in your own minds that this witness would have testified adversely or contrary to the State’s cause, and the presumption will be against the State and their failure to call this witness, providing, of course, the witness was available to the State.”
 

 Counsel for defendant argues that the basis of this requested charge was that the State actually summoned and had present in court during the trial two witnesses whom it did not call to testify. One of these was actually present when the sale of narcotics was consummated, and the other, as shown by the per curiam of the trial judge, was an associate administrator of the hospital at which defendant was employed.
 

 R.S. 15 :432 provides : “A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence; such is the presumption * * * that
 
 evidence under the control of a party
 
 and not produced by him was not produced because it would riot have aided him * (Italics ours.)
 

 Under the plain language of this article we must conclude that this presumption does not arise if the witness is equally available to both the State and the defense; for then evidence which might be obtained from his testimony is not evidence “under the control” of the State. According to 1 Wharton’s Criminal Evidence (12th ed. 1955), sec. 144, p. 268,
 
 “*
 
 * * The presumption does not arise if the witness is equally available to both parties * * State v. Nejin, 140 La. 793, 74 So. 103; State v. Stickney, 167 La. 1050, 120 So. 853.
 

 Thus the requested charge is not wholly correct and would require qualification, limitation, or explanation. It was therefore properly refused.
 

 Bill of Exception No. 20.
 

 This bill was taken to the overruling of defendant’s motion and supplemental and amended motion for a new trial. The motion presents only two issues which we have not already decided in our disposition of the various bills relied on by the defendant.
 

 One of the grounds urged in this motion, as stated in defendant’s brief, is that the verdict is contrary to the law in that “ * * * the Uniform Narcotics Act, L.R.S. 40:961 et seq., is violative of the rights of the defendant and particularly in view of Article I, Section 12, of the Louisiana Constitution, and the Eighth Amendment to the United States Constitution, in that those sentenced under the Act at the time of trial were absolutely ineligible for parole. This deprived the accused of equal protection of the laws, contrary to the Fourteenth Amendment, Section I, of the United States Constitution, in that it deprived him of the benefit of the general provisions of L.R.S. 15 :- 574.3, declaring that any person convicted of felony may be paroled after serving one-third of his sentence”.
 

 
 *111
 
 Clearly this is not, in fact, a contention that the verdict is contrary to the law, but is actually an attack upon the law itself. It is very doubtful whether such an attack can be made in a motion for a new trial, but in any event there is no merit in the contention. Counsel does not, nor do we think he can, cite any law or authority to support such a contention. See State v. Sais, 212 La. 868, 33 So.2d 665, and authorities there cited.
 

 Secondly, the defendant urges in his amended motion for a new trial that a conversation between one of the jurors and the court reporter, on the last morning of the trial before the proceedings for the day were commenced, shows that that juror was prejudiced and influenced from other sources than evidence at the trial. The gist of the juror’s remark alleged to show prejudice was that it was regrettable that the school children who were in court that morning were going to hear only the defendant and would not have the benefit of the State’s evidence. The trial judge correctly pointed out that a view expressed that it is better to hear both sides of a case is not a prejudiced view. The trial judge says that the verdict was amply supported by the evidence in this case. In taking evidence on this amended motion the defense attempted to prove that the juror, who was foreman of the jury, referred to the defendant in his remarks as a “nigger”. The juror emphatically denied this, and the court reporter admitted that she could have been mistaken in what she thought she heard; and the court must have considered it as not proved because this was not even mentioned in the reasons for refusing the new trial. This is nothing more serious, if true, than a somewhat derogatory manner of speaking of defendant’s race which does not of itself indicate hostility to the Negro race in general or prejudice against this particular defendant which would preclude the juror from deciding the guilt or innocence of the accused on the basis of the evidence presented.
 

 The conviction and sentence are affirmed.
 

 [1]
 

 . Several otlier bills have been abandoned and will not be discussed.
 

 [2]
 

 . No transcript of the testimony taken at the trial has been filed in this court.
 

 [3]
 

 . This objection was overruled by the trial judge, but the State at that time did not proceed further with the matter.
 

 [4]
 

 . Separation of tire jury in this case was permitted under R.S. 15:394.