Commonwealth *v.* Rose, Appellant.
Commonwealth ex rel. Magaziner, Appellant, *v.*
Sheriff of Philadelphia County.

Argued November 17 and November 25, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Vincent A. Cirillo,* for appellant.

*William T. Nicholas,* Assistant District Attorney, with him *Richard A. Devlin* and *Stewart J. Greenleaf,* Assistant District Attorneys, *Parker H. Wilson,* First Assistant District Attorney, and *Milton O. Moss,* District Attorney, for Commonwealth, appellee.

*William T. Coleman, Jr.,* with him *Louis E. Levinthal, Louis M. Natali, Jr.,* and *Dilworth, Paxson, Kalish, Kohn & Levy,* for appellant.

*James D. Crawford,* Assistant District Attorney, with him *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for appellee.

OPINION BY MR. JUSTICE COHEN, January 30, 1970:

These appeals raise related questions concerning the procedure a common pleas judge must follow when he is acting as a committing magistrate. The facts are as follows:

Rose was tried on June 20, and 21, 1967 before a judge and jury on an indictment charging fornication and bastardy. Rose testified he could not have engaged in intercourse with the prosecutrix at the time of the alleged conception because at that time he was attending a training course with the Army National Guard in Maryland. In rebuttal, the Commonwealth called a National Guard officer who testified that Rose was finally separated from service five months before the date appellant stated he concluded the training course. After the jury's verdict of acquittal, Judge DITTER, at the request of the Assistant District Attor-

ney, sat as committing magistrate and held the appellant on a charge of perjury based on his testimony as to his whereabouts during the time in question. No criminal complaint accusing the appellant of perjury was ever issued, and no preliminary hearing was ever held.

On September 8, 1967, the Grand Jury of Montgomery County approved an indictment charging Rose with perjury, and on January 19, 1968 appellant filed a motion to quash the indictment. The court below granted the motion to quash giving as its principal reason the failure to adhere to the Rules of Criminal Procedure in that no complaint was ever issued nor a preliminary hearing ever held. On appeal the Superior Court reversed that order, 214 Pa. Superior Ct. 50, 251 A. 2d 815 (1969), holding that a complaint and preliminary arraignment were unnecessary because Rose knew of the specific charges against him and that the court's action itself constituted a preliminary hearing.

Magaziner, a defendant in a minority stockholders' action, was called as a witness upon cross-examination. On April 1, 1969 he was cross-examined as to what had occurred at a shareholders' meeting on January 13, 1969. Counsel for the plaintiffs in that action, Mr. Egnal, read from the transcript of that meeting and asked Magaziner if he, Egnal, had made certain remarks to Magaziner at that meeting. Magaziner said that interchange had never taken place and after repeating this several times suggested that Egnal had been talking to Mr. Katz, the stenographer. At this point the hearing was adjourned, and when it resumed on May 19, Magaziner stated he had heard a tape recording of the meeting and learned that the interchange had actually taken place. He admitted he erred in saying these things had not happened, but maintained that when they had happened he had not heard them.

At the conclusion of this testimony but before the conclusion of the motion for a preliminary injunction, Judge GREENBERG, who was presiding, charged Magaziner with perjury. He refused to enter bail and was released on a rule for a hearing on a writ of habeas corpus issued by Judge ALEXANDER. On June 4, Judge MEADE heard argument and dismissed the writ. Thereupon Judge MEADE assumed the role of a committing magistrate and held a preliminary hearing on the perjury charge. He did this despite the fact that no complaint had been filed. Again Magaziner refused to enter bail and made application for a second writ of habeas corpus. Judge CANUSO dismissed the writ on August 8, 1969, and the Superior Court quashed Magaziner's appeal on August 27, 1969.

In the Magaziner action a very serious question exists as to whether an appeal from the denial of a pretrial habeas corpus petition is interlocutory and must be quashed. *Commonwealth ex rel. Gordy v. Lyons,* 434 Pa. 165, 252 A. 2d 197 (1969) ; *Commonwealth ex rel. Bittner v. Price,* 428 Pa. 5, 235 A. 2d 357 (1967) ; *Commonwealth ex rel. Fisher v. Stitzel,* 418 Pa. 356, 211 A. 2d 457 (1965) ; *Commonwealth ex rel. DiDio v. Baldi,* 176 Pa. Superior Ct. 119, 106 A. 2d 910 (1954). In the Rose action, an equally serious question exists as to whether the indictment cured any prior defects or, if not, whether defects preliminary to the indictment should be considered on a motion to quash. We specifically are not deciding these difficult questions. We are deciding the merits of these appeals because great confusion has resulted over the proper interpretation and application of our Rules of Criminal Procedure in the situation where a common pleas judge sits as a committing magistrate, and under our administrative powers we feel it necessary to set clear guidelines in this area for the lower courts.

Our Rules of Criminal Procedure speak in clear, inclusive terms. Nothing in them suggests that they do not apply to common pleas judges who sit as committing magistrates. Therefore, we hold that common pleas judges when sitting as committing magistrates must follow the rules precisely.

This means that proceedings must be initiated by a written complaint. Rule 102 clearly states, "all proceedings shall be initiated by a written complaint," and until other rules carve out exceptions, the reference to "all" must be taken literally.[1] It is no answer that the particular defendant already has notice of the charges against him. Notice or knowledge of a charge is not a unitary thing; it is a spectrum which ranges from total lack of knowledge to a general impression to detailed awareness of all relevant facts. Rule 104, in prescribing the contents of a complaint, established a standard of knowledge that all accused must possess. For this Court and other courts to have to determine on a case-by-case basis whether a particular defendant had the information that would have been included in a complaint makes no sense when the time and energy that would be involved is considered. Rules 102 and 104 provide a clear and simple procedure; until exceptions to those rules are adopted, they must be followed in all cases.

This also means that a preliminary arraignment must be held pursuant to Rule 116 and, if not waived, a preliminary hearing held pursuant to Rules 116g, 117, 118 and 119. In the Rose appeal, the Superior Court held that trial on the fornication and bastardy charge was itself the preliminary hearing on the perjury charge. It is difficult to uphold such an action as a valid preliminary hearing when Rose did not even know that it was such. As far as he knew, he was

---

[1] After May 1, 1970 see Rules 102 and 118.

only being charged with fornication and bastardy. If he had known that the trial was also a preliminary hearing on a perjury charge, he might have taken certain steps and called various witnesses in defense of that charge. We cannot say that what occurred at the trial is essentially what would have happened at a preliminary hearing, because there is no way of knowing how Rose would have defended himself if he had known of that charge.

Since no written complaint was filed against Magaziner, the procedure followed was defective. The procedure was likewise defective in the Rose action because no written complaint was filed and because no proper preliminary arraignment and no preliminary hearing were held.

In the appeal of Rose, the order of the Superior Court is vacated and the order of the court below is reinstated. In the appeal of Magaziner, the order of the Superior Court quashing the appeal is vacated and the order of the court below denying the writ is reversed.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

While I am in complete agreement with the majority's interpretation of our Rules of Criminal Procedure, I must respectfully dissent from the majority's disposition of these two appeals. In my opinion, both appeals should be quashed as interlocutory.

I think there is no doubt that the Commonwealth must strictly adhere to our Rules of Criminal Procedure. Likewise, it is clear that this Court must strictly enforce compliance. We certainly do not promulgate Rules merely to have them ignored or circumvented. But the issue before us now is not whether we should enforce our Rules, but when we should do so. In the instant cases, we may never be required to enforce compliance, since the Commonwealth may not be able to

secure convictions. And if convictions are obtained, we can deal with these violations in our normal course of adjudication. Certainly the Commonwealth should realize that this Court will not allow a conviction to stand which has been secured in violation of our Rules.

The majority claims that it is "not deciding these difficult questions" of appealability. But by deciding the instant appeals on their merits, the majority has, in fact, decided that the orders involved here are appealable. The majority does not, however, carefully articulate the reasons for its departure from the normal rules governing finality, nor has it given sufficient indication of the circumstances in which it will again depart from these rules. Clarity in our rules of finality will encourage swifter disposition of litigation on the trial level, and will help keep our dockets free of cases which we may never be required to decide. I do not think it wise to blur our definition of finality by attempting ad hoc dispositions, as the majority does here, and I must, therefore, dissent.

Mr. Chief Justice BELL joins in this dissent.