## Commonwealth v. Beharry

*Robert F. Banks,* First Assistant District Attorney, for Commonwealth.
*William J. Rundorff,* for defendant.

ACKER, *J.,* January 7, 1976.—Through a motion to quash the indictment, defendant obtained a rule to show cause upon the Commonwealth which is presently for consideration before this court. The rule was issued prior to the meeting of the grand jury and the return of a true bill. Wherefore, this court delayed the disposition of the matter until after the return of the grand jury in the event that a true bill not be returned. Defendant has now been indicted for delivery of illegal drugs in Hickory Township on May 12, 1975, and on June 13, 1975, and for conspiracy as to both of the deliveries.

The court informed the parties that not only would it consider the motion to quash the indictment but would also consider it as a suppression motion.

The parties stipulated to certain facts in writing as well as additional facts at the time of the hearing. Basically, the facts upon which the matter is to be decided are as follows:

Through an undercover agent, sales were made by defendant of illegal drugs on May 12 and June 13, 1975. The undercover agent was employed by the Shenango Valley Narcotics Unit. That unit is made up of contributing municipalities, with officers supplied by various municipalities and sponsored by their municipality; but Hickory Township is not one of the contributing municipalities. Officers of the Hickory Township Police Department

came to defendant's home. Defendant was absent, but they informed his parents that they had warrants for defendant's arrest. Upon the advice of his attorney, defendant went to the Hickory Township Police Department on October 3, 1975, along with his parents. The complaints had been filed with District Magistrate Frank Tamber, whose judicial district is located in Hickory Township, but includes the City of Farrell. On that date, the Shenango Valley Narcotics Unit had its headquarters and sole office in the Police Department in Farrell; its chief, Gary Lenzi, was an officer of the Sharon Police Department assigned to the Narcotics Unit. At the Hickory Police Department on that date the criminal complaint was read to defendant by an officer of the Narcotics Unit; that officer advised defendant of his Miranda rights and he was fingerprinted and booked by a representative of the Narcotics Unit. Thereafter, he was taken to the office of the district magistrate, Frank J. Tamber, and a preliminary arraignment was held and defendant was placed on bail. At the preliminary hearing, defendant moved to dismiss the charges on the ground that Gary Lenzi, from the Narcotics Unit, lacked the authority to investigate crime and execute arrest warrants for offenses which occurred in Hickory Township. Defendant's motion was denied and the case held for the next term in the Mercer County grand jury. Neither Lenzi nor the undercover agent are employed in any capacity by the Township of Hickory.

*Should either evidence be suppressed which was obtained prior to an alleged illegal arrest, or an indictment be dismissed because of an illegal arrest?*

Defendant advances a unique argument, without support of authority, that a police officer has no

right to investigate a crime, even though he does not in any way violate any constitutional rights of defendant, in any jurisdiction other than his own. To so hold would have far-reaching effects on police procedure. It would deny police officers the right to enter into another jurisdiction, discover the whereabouts or identity of the perpetrator of a crime and contact the local police officials to make the actual arrest or obtain the necessary search warrant.

The argument is based upon the concept that ". . . the individual safeguards envisioned by the Federal Constitution and the laws of Pennsylvania are designed to protect the individual from invasion of his rights by police and other governmental agencies. Among those rights is certainly the right to be free from investigation by police departments and police agencies which are not supported by the municipality in which alleged offenses are said to have occurred."

This sweeping declaration is made without any citation of authority.

Secondly, defendant argues there is a broad policy question concerning the use of undercover narcotics agents, the inference being that use of narcotics agents must, in some way, be innately wrong and that because on occasion they have abused or transgressed upon individual rights, they must be prevented from operating at all. Likewise, there is no authority cited for this proposition.

There is no contention that there was any search or invasion of any of the constitutional rights of this defendant. Rather, he entered into two separate transactions for the sale of illegal drugs, both of which were clearly illegal. Our courts have recognized that undercover agents are a necessary and proper police function. The Fourth Amendment affords no protection to those who mistakenly place

their confidence in such undercover agents: Commonwealth v. Brown, 437 Pa. 1, 6, 261 A.2d 879 (1970).

Wherefore, this court cannot conclude that undercover agents are denied the legal right to make purchases of drugs in areas over which they have no immediate jurisdiction.

Nor can this court conclude that any of the evidence obtained is subject to suppression. The arrest was October 3, 1975. The evidence was obtained through the two sales on May 12 and June 13, 1975. It was, therefore, obtained long before the arrest. Defendant relies heavily on Commonwealth v. Troutman, 223 Pa. Superior Ct. 509, 302 A.2d 430 (1973). There, the lower court's dismissal and quashing of the information was affirmed. That affirmed a decision of the lower court to dismiss the information based upon the fact that defendant had been illegally arrested prior to the filing of the information. In that case, defendant was successful in getting out of the jurisdiction of the arresting officers in pursuit for driving while under the influence, prior to being arrested in another jurisdiction without calling officers of that jurisdiction. That decision spawned the Act of November 2, 1973, P. L. 330 (No. 109), sec. 1, 19 P.S. §11, which permitted the fresh pursuit of an offender after the commission of the offense. Therefore, Troutman, supra, is readily distinguishable because the evidence was come by through an illegal stop and defendant had been illegally arrested prior to the filing of the information. Further, there is grave doubt as to whether arresting a judgment is a proper course when the issue is suppression of evidence not specifically involved in Troutman: Commonwealth v. Garvin, 448 Pa. 258, 293 A.2d 33 (1972) involved identification through an illegal

arrest. Nevertheless, the court refused to suppress the identification, concluding that, at page 264: "[T]he only effect of the illegal arrest was to hasten the inevitable confrontation and not to influence its outcome." To the same effect, see Commonwealth v. Davy, 227 Pa. Superior Ct. 455, 323 A.2d 148 (1974).

Commonwealth v. Ward, 235 Pa. Superior Ct. 550, 344 A.2d 650 (1975), and Commonwealth v. Brenneman, 236 Pa. Superior Ct. 120, 344 A.2d 564 (1975), relied upon by defendant, similarly deal with evidence obtained after, or as a result of, an illegal arrest not here applicable.

It would appear that the conduct of Officer Lenzi in obtaining the assistance of the Hickory Township Police Department is exactly that outlined in Commonwealth v. Troutman, supra, as the proper procedure. The fact that the warrant itself may have been read by Officer Lenzi is not dispositive of the matter. It could just as well have been read by a Hickory police officer where defendant was then voluntarily appearing. The location of the district magistrate's office is established by direction of the President Judge of the Common Pleas Court through court order and is located within Hickory Township. The Narcotics Unit has no control of where that office may be and is required to come into Hickory Township to secure the necessary search warrants and to have the arraignment of defendant within that township.

It must be recognized there is a distinction between arrests which are violative of constitutional rights as opposed to statutory rights: Commonwealth v. Griffie, 21 Pa. Commonwealth Ct. 403, 346 A.2d 838 (1975). This arrest is of the latter category.

Even if the arrest is deemed to be illegal, it does

not follow that the indictment must be quashed. Defendant's remedy was a petition for a writ of habeas corpus as suggested in Commonwealth v. Krall, 452 Pa. 215, 219, 304 A.2d 488 (1973):

"It has long been the law in this and in other jurisdictions that 'the mere fact that the arrest of an accused person is unlawful is of itself no bar to a prosecution on a subsequent indictment or information, by which the court acquires jurisdiction over the person of the defendant.' 41 Am. Jur. 2d, Indictments and Informations, §18, at 891 (1968). In Albrecht v. United States, 273 U.S. 1, 5, 47 S. Ct. 250,251, 71 L. Ed. 505 (1927), the contention was made that the warrant on which the defendant was initially arrested was defective and that therefore the criminal information subsequently filed must be quashed. The court, per Brandeis, J. did not agree: 'As the affidavits on which the warrant issued had not been properly verified, the arrest was in violation of the clause in the 4th Amendment which declares that "no warrant shall issue but upon probable cause supported by oath or affirmation" . . . but it does not follow that because the arrest was illegal, the information was or became void.' "

The Pennsylvania law is to the same effect in Commonwealth v. Brennan, 193 Pa. 567, 569, 44 Atl. 498 (1899). See also Commonwealth ex rel. DiDio v. Baldi, 176 Pa. Superior Ct. 119, 106 A.2d 910 (1954); Frisbie v. Collins, 342 U.S. 519, 72 S. Ct. 509 (1952); Ker v. Illinois, 119 U.S. 436, 7 S. Ct. 225 (1886); Dow's Case, 18 Pa. 37 (1851); Annotation, 165 A.L.R. 947. Defendant could also have proceeded as in Commonwealth v. Troutman, supra, with a motion to quash the information.

If this court had acted upon the request to quash the indictment when it first came before it, the request would have been dismissed as premature.

Wherefore, this court concludes that the motion to quash and to suppress evidence must be both denied.

## ORDER

And now, January 7, 1976, defendant's application to quash the indictment and to suppress evidence is denied.