## In re PACAT FINANCE CORPORATION et al.

Circuit Court of Appeals, Second Circuit.
August 20, 1928.

No. 248.

**1. Appeal and error ⬅️78(5)—Interlocutory order, confirming master's report denying recovery on trust theory, but retaining jurisdiction, held not appealable, and no bar to claim of trust on appeal from judgment.**

Order confirming report of first master, denying claimant's recovery against trustee in bankruptcy on theory of express trust, but which allowed claimant to proceed on theory of tracing money, and which expressly stated that its provisions were interlocutory only and that jurisdiction was retained until second report and action thereon, held not final, and appealable order, and does not bar claimant from urging trust theory on appeal from judgment in district court.

**2. Courts ⬅️406(1)—Circuit Court of Appeals may deal with record irrespective of limitations of theory of trial judge's decision.**

Circuit Court of Appeals may deal with record as it finds it, irrespective of limitations of theory on which trial judge rendered decision.

**3. Bankruptcy ⬅️140(5)—Cable directing correspondent bank to transfer money to claimant, not complied with, held not to create trust fund in deposit against bankrupt's trustee.**

Cable by bankrupt pursuant to contract with claimant for purchase of foreign exchange, directing correspondent bank to transfer money from its account to credit of claimant, which was not done, held not to constitute appropriation of any part of deposit to contract so as to impress deposit with trust in favor of claimant as against bankrupt's trustee appropriating deposit, where it did not appear that bankrupt intended payment to be made only out of specific credit referred to in cablegram and bankrupt's account showed overdrafts.

**4. Bankruptcy ⬅️303(1)—Creditor, to establish trust against bankrupt for lire purchased but not delivered, had burden of establishing express appropriation of specific lire.**

In reclamation petition by creditor purchasing lire from bankrupt, which were not delivered by bankrupt's correspondent bank, to impress trust on funds of bankrupt in correspondent bank appropriated by trustee, creditor had burden of establishing express appropriation of specific lire out of bankrupt's deposit in correspondent bank.

**5. Bankruptcy ⬅️140(5)—Direction to correspondent bank to pay customer out of general funds does not establish express appropriation against bankrupt's trustee.**

Mere direction by bankrupt to correspondent bank to pay customer purchasing foreign exchange out of bankrupt's general funds is not sufficient to establish express appropriation of specific foreign exchange out of bankrupt's general funds as against bankrupt's trustee.

**6. Bankruptcy ⬅️303(3)—Evidence held not to establish express trust in specific lire by appropriation of lire by bankrupt directing correspondent bank to make payment.**

Evidence that bankrupt, pursuant to contract with claimant for transfer of lire, cabled correspondent bank before bankruptcy that it would receive deposit for account of bankrupt four days after date of cable and to pay claimant certain amount of lire, that claimant was entitled to receive payments before alleged deposit, and that bankrupt was in habit of notifying correspondent of deposit and directing payment to customers in same cablegram, held not to show express trust in specific lire by reason of appropriation of lire out of bankrupt's deposit as against bankrupt's trustee.

**7. Bankruptcy ⬅️303(1)—Claimant, to establish constructive trust in funds held by bankrupt's trustee for lire purchased, was required to trace specific dollars used in purchasing lire.**

In proceedings by claimant against trustee in bankruptcy to recover value in American dollars of lire purchased from bankrupt, on theory of constructive trust by reason of tracing claimant's dollars into lire and thence back into dollars held by trustee, claimant was required to prove specific dollars sought to be traced and to show which of his several contracts of purchase remained unperformed by bankrupt.

**8. Bankruptcy ⬅️303(3)—Evidence showed performance of last transactions between claimant and bankrupt rather than prior transactions for purchase of foreign exchange.**

In reclamation petition by claimant purchasing foreign exchange from bankrupt to establish trust in funds of bankrupt on deposit with correspondent bank, evidence of cable sent by bankrupt to correspondent bank directing payment of foreign exchange to claimant, showed performance of last two transactions between bankrupt and claimant rather than prior transactions, though value date, which is date on which interest adjustments were to be made abroad, corresponded with value date of prior transactions.

**9. Bankruptcy ⬅️140(5)—Foreign exchange credits, established with proceeds of checks of claimant purchasing exchange, were held by bankrupt subject to lien for claimant pro tanto destroyed by depletion of fund.**

Under evidence that claimant of trust in funds of bankrupt for foreign exchange, purchased but not delivered, paid bankrupt by check on December 13, 14, and 15 for foreign exchange, which checks were deposited by bankrupt to its general account on each of such dates, and that bankrupt drew its checks on December 14, 15, and 16, to pay for foreign exchange received and credited to bankrupt, credits of foreign exchange created by bankrupt's withdrawals when his account was composed in part of claimant's checks were held by bankrupt on constructive trust, and were in equity subject to lien or charge in favor of claimant, which would be pro tanto destroyed by depletion of fund.

**10. Bankruptcy ⬳140(5)—Deposits, not proceeds, of claimant's money could not restore trust fund previously created by purchase of foreign exchange with claimant's money.**

Where bankrupt was shown to hold foreign exchange credits created in part by checks of claimant purchasing foreign exchange on constructive trust, subject to lien in favor of claimant, and credit was thereafter depleted, subsequent deposits of foreign exchange, not shown to have been proceeds of claimant's money, would not restore trust fund.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the Pacat Finance Corporation, bankrupt. The claimant, M. Berardini State Bank, a New York corporation, sought to reclaim from Stuart McNamara, trustee in bankruptcy of the Pacat Finance Corporation, bankrupt, 750,000 lire as exchanged by the trustee into American dollars, now in his possession. From an order (295 F. 394) allowing recovery of the dollar value with earned interest thereon of only 92,352.10 lire, both litigants appeal. Affirmed.

Edmund L. Mooney, of New York City (Wilber W. Chambers, of New York City, of counsel), for claimant.

Francis L. Kohlman, of New York City (Sydney Krause, of New York City, of counsel), for trustee in bankruptcy.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge. The claimant, hereinafter referred to as Berardini, contends that the trustee in bankruptcy of Pacat Finance Corporation hereinafter referred to as Pacat, came into possession of 750,000 lire, which belonged to Berardini. He seeks to establish his right upon the theory of (1) an express trust in specific lire, by reason of an appropriation of them for him by Pacat prior to bankruptcy; or (2) a constructive trust by reason of tracing his own dollars into lire, and thence back into dollars held by the trustee. The trustee contends that the evidence is insufficient to prove claimant's right under either theory, and in addition asserts that the first theory is not before us on this appeal, because of a prior order from which no appeal was taken.

Prior to the filing of the petition in bankruptcy on December 30, 1920, Pacat had conducted a business of buying and selling foreign exchange. During several weeks just prior to said date, Berardini on 13 separate occasions had paid money to Pacat in New York, with directions to pay an equivalent sum in lire to Berardini's branch office in Naples. Pacat would thereupon cable its Italian correspondent, Credito Italiano, to make such payment. The aggregate of the exchange so purchased was 4,000,000 lire, and 3,250,000 lire had been paid to Berardini in Naples prior to Pacat's bankruptcy, 750,000 lire remaining unpaid. On the date of the bankruptcy petition, Pacat had a credit of more than this sum on the books of Credito Italiano, which the trustee subsequently reduced to possession. On April 15, 1921, Berardini filed his reclamation petition, seeking to impress a trust upon 750,000 lire of the sum standing to Pacat's credit on the books of Credito. Other creditors also filed reclamation claims, and all such proceedings were referred to a special master, who reported in favor of certain claimants, but adversely to Berardini. The District Court modified the master's report with respect to Berardini's claim, stating in his opinion (In re Pacat Finance Corporation, 295 F. 394, 414) as follows:

"My conclusion is: I agree with the master in holding that none of the funds in Credito Italiano were appropriated in a legal sense to Berardini. The direction that such appropriation be made was dishonored, due to the overdrafts of Pacat. Upon such theory of appropriation, the claim must be disallowed. Since, however, the principle of concurrent condition should be applied to the Berardini-Pacat contracts, and as Pacat defaulted in performance, it should be said that the moneys obtained from Berardini were held in trust by Pacat. The claim accordingly will be allowed for tracing and marshaling."

Accordingly, the order of October 10, 1923, entered in conformity with said opinion, allowed Berardini to proceed upon the theory of tracing dollars into Pacat's credit with Credito Italiano, and referred the matter to Special Master Olney to hear and report. By amendment of his petition Berardini specified that the contracts not performed by Pacat were three purchases of cable transfers, of 250,000 lire each, made on December 9, 10, and 13, 1920, for which he had paid, including cable charges, an aggregate of $26,330. The master reported against the claim in toto, but the District Court modified the report, allowing a recovery of the dollar value of 92,352.10 lire. The recovery was limited to this amount because of the subsequent depletion to that sum of the lire found to have been purchased with claimant's money. This is the decree from which both parties have appealed.

[1, 2] It is true that the theory of an express trust by reason of appropriation of lire for Berardini's account was found against him by the first master, and his report was confirmed in this respect by the order of October 10, 1923, which allowed Berardini to proceed further on the theory of tracing money. This order, however, expressly stated that its provisions were interlocutory only, and that jurisdiction was retained until the coming in of the second report and action thereon by the court. Consequently it was not a final and appealable order, and we do not see how it can bar Berardini from urging that on the record before us he has proved an express appropriation of lire for his account. See Buckingham v. McLean, 13 How. (U. S.) 150, 14 L. Ed. 91; Buster v. Wright, 135 F. 947, 959 (C. C. A. 8). We may deal with the record as we find it, irrespective of the limitations of the theory upon which the trial judge rendered decision.

[3] But the evidence, in our opinion, fails to prove any express appropriation of lire for Berardini. The contention is that Berardini had contracted with Pacat for the cable transfer of three sums of 250,000 lire each, and that in attempted performance thereof Pacat sent the following cablegram to Credito Italiano:

"December 13th, 1920.

"Credit Genoa 355 Dec. 13th you will receive for our account from Banca D'Italia Dec. 17th one million lire stop Pay one hundred thousand to Banca Commerciale Italiana Rome for account of Lahan Baltimore stop Pay to M. Berardini Naples seven hundred fifty thousand.

"Pacatfin."

It is argued that this cablegram constituted an express designation and appropriation for Berardini of 750,000 lire out of the 1,000,000 lire which it says will be received from Banca D'Italia on December 17th; that Credito Italiano did receive the promised deposit (though on December 18th, instead of the 17th), and thereby became bound to hold 750,000 lire thereof in trust for Berardini; that because of some misunderstanding of the cablegram Credito Italiano never performed the trust by payment to Berardini, and therefore the trust continued to be impressed upon the lire which stood to Pacat's credit on Credito's books, and which the trustee in bankruptcy subsequently exchanged into dollars. If it were true that the cable of December 13th should be construed as a direction to pay Berardini out of a specific fund, we might agree (assuming the other necessary facts to have been proved) that a

trust was established within the rule of Farley v. Turner, 26 L. J. Ch. 710. But we cannot agree to the construction contended for.

With equal reason the cablegram may be read as conveying, first, a notification that Credito Italiano will receive from Banca D'Italia on December 17th a deposit of 1,000,000 lire for the account of Pacat; and, second, a direction to pay at once out of any funds to the credit of Pacat the sums specified for Berardini and Banca Commerciale Italiana. It is by no means clear that Pacat intended these payments to be made only out of the specific credit referred to in the cablegram. As appears by Claimant's Exhibit 7, Pacat's account with Credito Italiano sometimes shows overdrafts. Other cablegrams (e. g., No. 1385, of November 29, 1920, and No. 1524, of December 10, 1920—Claimant's Exhibit 3 of December 3, 1924) show that Pacat sometimes sent a single message, notifying of a deposit and directing payment or credit to customers of more than the amount of the deposit. Lindau testified that sometimes directions to pay were cabled abroad before payment had been received here, if the purchaser's credit was satisfactory. Such practices are inconsistent with the contention that the direction to pay must be construed as limited to a payment out of the deposit mentioned in the same message.

[4, 5] Moreover, we see nothing in the cablegram of December 13th to require payment to be deferred until December 17th. Two of Berardini's three contracts for the purchase of cable transfers were "payable here and there December 13th," and the third provided for payment on December 15th. Berardini had made his payments to Pacat in New York on December 13th, 14th, and 15th, and was entitled to receive payment in Naples contemporaneously, subject only to delays necessarily incident to transoceanic communication. If the cable to Credito Italiano was sent in order to effectuate performance of these three contracts, as claimant maintains, we should expect it to direct immediate payment upon receipt of the cable, rather than on December 17th, or such later date as the deposit from Banca D'Italia might actually be received. Apparently the directed payment for account of Lanahan was made December 14th (Exhibit 7). The claimant had the burden of establishing an express appropriation of specific lire and his proof does not meet it. Merely directing Credito Italiano to pay out of Pacat's general funds is, of course, not sufficient. See Equitable Trust Co. v. First Nat. Bank, 275 U. S. 359, 48 S. Ct. 167, 72 L. Ed. ——.

[6] On the theory of a constructive trust, Pacat is assumed to hold the dollars received from Berardini in trust for the latter until payment of lire, agreed to be paid contemporaneously, should be made, and Berardini seeks to trace his dollars, or their proceeds, into the hands of the trustee in bankruptcy. See In re Pacat Finance Corp. (D. C.) supra at page 398. Under this theory Berardini must prove the specific dollars he is seeking to trace. Therefore he must show, first of all, which of his several contracts of purchase remained unperformed by Pacat. The trustee denies that this has been proven. The dispute revolves about five transactions which appear in Pacat's Purchase and Sales Ledger (Claimant's Exhibit 10 of February 2, 1925) as follows:

date when payment of lire was due to Berardini in any of the five contracts above tabulated. We regard the entries in the value date column as of little significance for purposes of identification. In several instances the original entries have been obliterated and other figures inserted in lead pencil. The trustee's contention that the cable of December 17th must have related to the contracts of December 9th and 10th, because it mentions a value date of December 20th, cannot be maintained.

[8] Berardini paid Pacat for the three unperformed contracts by checks dated, respectively, December 13th, 14th, and 15th, and for the respective amounts of $8,802.50, $8,777.-50, and $8,750. Each of these checks was deposited by Pacat in its general account in the

| Bill No. | Purchase Date. | Lire. | Rate. | Delivery Date. | Amount. | Value. Date. | Cable Charges. |
|---|---|---|---|---|---|---|---|
| 1106 | Dec. 9, '20 | 250,000 | 3.52 | Dec. 13, '20 | 8,802.50 | Dec. 20 (12/20) | 12/13 |
| 1112 | " 10, '20 | 250,000 | 3.51 | " 13, '20 | 8,777.50 | Dec. 20 (12/20) | 12/13 |
| 1134 | " 13, '20 | 250,000 | 3.50 | " 15, '20 | 8,750.00 | (———) | 12/13 |
| 1170 | " 14, '20 | 250,000 | 3.43¾ | " 17, '20 | 8,596.75 | Dec. 23 (12/30) | 12/17 |
| 1193 | " 16, '20 | 500,000 | 3.53¾ | " 20, '20 | 17,690.00 | Dec. 23 (12/30) | ·12/17 |

[7] Berardini contends that the first three were not performed, and the last two were. Proof as to performance of the last two consists of a cable of December 17, 1920, from Pacat to Credito Italiano, and the latter's letter of advice of December 30th. The cable of December 17th repeated the directions of the cable of December 13th, already quoted, and, after giving notification of deposits to be received, directed: "Pay to M. Berardini Naples for account of New York office seven hundred fifty thousand value December twentieth." The letter of advice reported that under value date of December 23d 750,000 lire had been paid Berardini, Naples, "for a/c their New York (your cable 17/12)." No report of performance of the payment directed in the cable of December 13th was ever received from Credito Italiano. On this evidence the District Court inferred that the payment reported by Credito Italiano related to the last two contracts, and that the first three remained unperformed.

With this conclusion we agree. The trustee's argument contra is based altogether upon the "value date," which is explained in the testimony as meaning that interest adjustments (presumably between Pacat and Credito Italiano) were to be made abroad as of the date stated. There appears to be no correspondence between the value date and the

National Park Bank on the day it bears date. At the time of bankruptcy a considerable balance remained in this account, but Berardini has expressly disclaimed any interest in this balance, all of which has been reclaimed by others. See In re Pacat Finance Corp., supra. His contention is that his dollars are traceable into the lire credit which Pacat had with Credito Italiano at the date of the bankruptcy. On December 14th, Pacat drew its check on its account in the National Park Bank to pay for 1,000,000 lire to be sent to Credito Italiano through the Banca D'Italia. This sum was received by Credito Italiano and credited to Pacat. On December 15th and 16th Pacat again drew checks which purchased 2,000,000 lire that were deposited to its credit with Credito Italiano. While Berardini's dollars cannot literally be traced into any of these lire credits, the applicable principle is that stated by Joyce, J., in In re Oatway, L. R. [1893] 2 Ch. 356, 359:

" * * * It is, in my opinion, equally clear that when any of the money drawn out has been invested, and the investment remains in the name or under the control of the trustee, the rest of the balance having been afterwards dissipated by him, he cannot maintain that the investment which remains represents his own money alone, and that what has been spent and can no longer be

traced and recovered was the money belonging to the trust."

Accord: Brennan v. Tillinghast, 201 F. 609, 614 (C. C. A. 6); Primeau v. Granfield, 184 F. 480, 484 (C. C. S. D. N. Y.); In re A. O. Brown & Co., 189 F. 432, 439 (D. C. S. D. N. Y.); City of Lincoln v. Morrison, 64 Neb. 822, 90 N. W. 905, 57 L. R. A. 885.

[9, 10] Consequently the lire credits created by withdrawals from the National Park Bank, when Pacat's account therein was composed in part of Berardini's checks received and held by Pacat on constructive trust, were in equity subject to a lien or charge in favor of Berardini. But his lien or charge would be pro tanto destroyed by depletion of the fund, and such depletion occurred when Pacat's balance with Credito Italiano was reduced to 92,352.10 lire on December 19, 1920. Subsequent deposits of lire, not shown to have been the proceeds of Berardini's money, would not restore the trust fund. Schuyler v. Littlefield, 232 U. S. 707, 34 S. Ct. 466, 58 L. Ed. 806; In re A. D. Matthews' Sons, Inc., 238 F. 785 (C. C. A. 2). And there is no such showing. The claimant argues that the doctrine of Gorman v. Littlefield, 229 U. S. 19, 33 S. Ct. 690, 57 L. Ed. 1047, should control, but this doctrine does not apply to cash in bank, and lire credits we regard as of that class.

The order of the District Court is accordingly affirmed.