In the Matter of **LINDA COAL AND SUPPLY COMPANY**, a Corporation, Alleged Bankrupt.

**L. H. Haberman & Son, Ellsworth Meeder, Ralph Barkley and Robert J. Cunningham, Jr., Appellants.**

No. 12392.

United States Court of Appeals
Third Circuit.

Argued March 7, 1958.

Decided May 19, 1958.

Earl F. Reed, Pittsburgh, Pa. (William D. Sutton, Thorp, Reed & Armstrong, Pittsburgh, Pa., on the brief), for appellants.

Edmund K. Trent, Pittsburgh, Pa. (Elder W. Marshall, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This case started with the filing of a petition by certain general creditors of Linda Coal and Supply Company praying that the corporation be adjudged a bankrupt. The relevant portions of the Bankruptcy Act are set out in the margin.[1] After a hearing in which the evidence dealt only with the circumstances of the disposition of a certain dragline, the court below stated that " * * * there was but one issue and it is, as stated in the Complaint, that ' * * * said Linda Coal and Supply Company * * * made a * * * transfer of one Model 2400 Lima Dragline without fair consideration, while insolvent, * * * ' ". The court found that the dragline was sold " * * * for a fair and reasonable consideration and for a price equivalent to its then market value." The court concluded as a matter of law that in selling the dragline on the

---

1. Section 67, sub. d(2) of the Bankruptcy Act, 11 U.S.C.A. § 107 sub. d(2):

"Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; or * * * (d) as to then existing and future creditors, if made or incurred with actual intent as distinguished from intent presumed in law, to hinder, delay, or defraud either existing or future creditors."

Section 3, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 21, sub. a:

"Acts of bankruptcy by a person shall consist of his having (1) concealed, removed, or permitted to be concealed or removed any part of his property, with intent to hinder, delay, or defraud his creditors or any of them, or made or suffered a transfer of any of his property, fraudulent under the provisions of section 67 (11 U.S.C.A. § 107) or 70 (11 U.S. C.A. § 110) of this title * * *."

terms it did, the company did not commit an act of bankruptcy.

■ Our study of the record leads us to doubt whether we would have reached that result with the same alacrity. That doubt is engendered by the evidence of a number of offers higher than the price ultimately received, of the president's cavalier rejection of such offers without referring them to the directors or the stockholders,[2] of the president's attempt to obtain the machine for himself at a price some $26,000 less than the final one, and of the president's association with the group which ultimately bought the dragline. There was evidence also of somewhat surprising subordination by the other two directors to the president in the face of evident lively interest in the machine on the part of the representative of the fourth stockholder in behalf of a prospective buyer. Nor would we have relied too heavily on the opinion of the expert, Ragner, that the ultimate $66,100 price was fair when elsewhere it had been developed that the machine had been valued as high as $100,000 by the manufacturer's representative, and at $75,000 by Ragner himself with the machine having remained idle between the times of these estimates and its ultimate sale. However, since it is not our function to weigh evidence, the findings of fact must, if supported by the evidence, be accepted. F.R.Civ.Proc. Rule 52(a), 28 U.S.C. In the situation we leave undisturbed the district court's determination that the company did not commit an act of bankruptcy by a transfer of the dragline without fair consideration.

Appellants' present argument relies chiefly on an assertion that the evidence shows an act of bankruptcy by the defendant in removing the dragline, with intent to hinder, delay, or defraud its creditors.[3] Appellee, however, contends that only the issue passed on by the court was raised in the petition, that the hearing was subsequently and expressly limited to that one issue, and that no other issue can now be raised.[4]

The wording of the petition does not on its face charge that the dragline was removed with intent to delay or hinder creditors. An allegation of that kind was made in paragraph six as to certain other machinery and materials, but was expressly disclaimed at trial as matter on which plaintiffs intended to erect their case. Paragraph six of the petition incorporates the first reference to the dragline, which was the subject of the trial, by stating as follows:

"* * * The said Linda Coal and Supply Company further made a transfer of its property fraudulent under the provisions of Section 67 of the Federal Bankruptcy Act by making transfer of one Model 2400 Lima Dragline without fair consideration, while insolvent, said transfer not having yet become so far perfected that no bona fide purchaser from the debtor can acquire any rights in the property so transferred superior to the rights of the transferee. * *"

Unless it is possible to read the petition as including the allegation concerning intent to delay and hinder creditors in the above-quoted allegation, it can fairly be said that the issue of intent to delay and hinder creditors by the transfer of the dragline is not raised by the petition.

If the only circumstance concerning petitioners' right to rely on a demonstration of intent to hinder and delay creditors involved a construction of the pleading, the policy of broadly construing and generously amending pleadings might

---

2. The president was a member of the Board of Directors consisting of three of the four stockholders, each of whom held 25% of the stock. The one stockholder who was not also a director is a brother of the president and a petitioner in this case.

3. Footnote 1, supra.

4. Appellee's argument on this point is limited to a bare nine lines in its brief. Appellant directs no argument to the question of whether the issue of intent to delay and hinder creditors was before the trial court or is properly before this court.

permit (if it did not require) the indulgent reading suggested in the preceding pargraph. But counsel for the petitioners repeatedly declared that the sole issue raised by them for resolution at the trial was whether the transfer of the dragline was effected for a fair consideration. At the opening of the trial counsel declared:

> "Now our petition, Your Honor, avers three acts of conduct on the part of the company which we feel constitute acts of bankruptcy, and we anticipate that the evidence will develop perhaps several other acts of bankruptcy, but for the purpose of this proceeding will confine ourselves primarily to the conduct with respect to the sale of one Model 2400 Lima Dragline. * * * "

> The Court: "Now, with regard to that, what is the point there, the point at issue with regard to that dragline? * * * "

> Counsel for petitioner: "Your Honor, we feel the circumstances surrounding the sale and the actual sale of the dragline constitutes fraud upon the creditors, as a matter of fact, a fraud upon the creditors as defined under Section 67 of the Bankruptcy Act, having been sold while insolvent for inadequate consideration."

In an interchange between court and counsel at the close of the petitioners' case, the court asked:

> "So you have the question then simply whether or not you made this transfer for lack of fair consideration while insolvent?"

And counsel for petitioners replied:

> "Yes sir."

Still another point against appellants is that they failed to move for amendment of the court's findings of fact as provided by Rule 52(b) after it was abundantly clear that the court's ruling was based on the one ground.

The unargued question before us is whether a party on appeal can for the first time indicate reliance on a rule of law, which on the facts in evidence might be applicable but which at best was raised only inferentially by the pleadings, when at trial there was express avowal of complete reliance on another rule of law which subsequently on the facts was found to be inapplicable.

 Consideration of this problem leads to the conclusion that a reversal cannot be grounded on a theory that the transfer of the dragline was an attempt intentionally to delay and hinder creditors. An appellate court will consider only such questions as are presented from the lower court or are implicit in its decision. Where the record contains evidence raising questions which might have been pressed and which are within the pleadings, the appellate court may of its own volition apply the pertinent rule of law even though the parties and trial court failed to do so.[5] But this procedure is not available here because certain facts necessary for application of the rule urged by appellants, though inferable from the evidence, were never passed upon by the trier of fact. Without a finding of fact as to the intent of the debtor to hinder, delay, or defraud its creditors, the relief prayed for by appellants cannot properly be granted by this court.

 But a question, differing somewhat from the one just considered, persists. That is whether a party who has expressly relied on one theory is entitled to an adjudication at the trial level on any other theory which might afford relief on the same evidence. The general though not inflexible rule, dictated by the

5. Examples of this procedure are: Huntress v. Huntress' Estate, 7 Cir., 1956, 235 F.2d 205; United States v. Comstock Extension Mining Co., 9 Cir., 1954, 214 F.2d 400; Massachusetts Bonding & Insurance Co. v. Harrisburg Trust Co., 3 Cir., 1945, 148 F.2d 784; Smith Engineering Co. v. Rice, 9 Cir., 1938, 102 F.2d 492, in which it is pointed out at page 499 that Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, was also such a case. In re Pacat Finance Corp., 2 Cir., 1928, 27 F.2d 810.

desirability of finality of judgments and seeing an end to litigation, is that a party is bound by and to the theory upon which he presents his case. In Keene Lumber Co. v. Leventhal, 1 Cir., 1948, 165 F.2d 815 the general rule was not followed. That decision involved an appeal from a dismissal of the complaint. The appellate court reinstated the complaint and sent the suit back for trial on a theory never advanced by the plaintiff but which was pieced out for him by the Court of Appeals. That action was in an earlier stage of litigation than is the one before us. But if, in the present appeal, both the petition and the subsequently evoked evidence would warrant finding certain facts which could support application of a rule of law not considered by the trial court, the instant case would be closely analogous to Keene Lumber Co. v. Leventhal, supra. The "short and plain statement of the claim showing that the pleader is entitled to relief" [6] and the evidence in support thereof are enough notice to a trial court of whatever theory underlies the action. On the other hand, the reason for holding a litigant to his announced theory becomes more compelling as the litigation proceeds to advanced stages. And the desirability of seeing an end to litigation would still call for application of the general rule for so confining a litigant if either the petition or the evidence are not permeated with the alternative theory which is now fully spelled out for the first time at this late date.

Our exploration of the shortcomings of the pleading and the course taken by the litigation leads to the conclusion that the theory now advanced is by no means obvious. We think, however, that neither is it obvious that petitioners are nonetheless not entitled to an adjudication on their theory. At the end of the hearing petitioners' request for permission to file briefs was denied. It is possible that had petitioners been permitted to brief the matter to the court the whole vexed question would have emerged. Appropriate procedures under Rules 52, 59 and 15 could thereupon have been followed. And had this been a jury trial, the proffer of proposed instructions by petitioners would have been dispositive of the issue; either it would have clearly developed for the judge's consideration or the failure to include it in the instructions to the jury, unobjected to by petitioners, would prevent it being raised thereafter. Rule 51, F.R.C.P.

Had petitioners been nothing more than obtuse in propounding their alternative theory or if the litigation were in a less advanced stage, we would remand with directions to vacate the judgment and to consider that theory. We are loath to do so because of counsel's assertions at trial of reliance on proving a transfer for inadequate consideration. The kinship to invited error is close, despite the trial judge's refusal to have the questions briefed. We therefore will affirm the judgment which will leave petitioners to whatever relief may be derived under Rule 60(b).