**COMMONWEALTH OF PENNSYLVANIA ex rel. George W. CRAIG, Appellant,**

**v.**

**James F. MARONEY, Superintendent, State Correctional Institution, Pittsburgh, Pennsylvania.**

**No. 14960.**

United States Court of Appeals Third Circuit.

Submitted Jan. 18, 1965.

Decided June 30, 1965.

George W. Craig, pro se.

John H. Brydon, Dist. Atty. of Butler County, Robert F. Hawk, Asst. Dist. Atty., Butler, Pa., for appellee.

Before McLAUGHLIN, FORMAN and GANEY, Circuit Judges.

FORMAN, Circuit Judge.

George W. Craig, presently confined in the State Correctional Institution at Pittsburgh, Pennsylvania, under a life sentence for murder, pursuant to his conviction on September 27, 1960, appeals

from the order of May 28, 1964 of the United States District Court for the Western District of Pennsylvania denying his application for a writ of habeas corpus.

A certificate of probable cause and permission to prosecute his appeal in forma pauperis were granted by order of this court.

In his application for the writ Craig proffered thirty-six grounds for relief. Each is phrased in a Socratic form raising trial errors and violations of his state and federal constitutional rights. The District Court entered a rule to show cause why the writ should not be granted and appointed counsel to represent Craig. A preliminary hearing on the rule was held on the return of which an order was filed fixing a date for an evidentiary hearing. The order further directed that Craig be limited at the hearing to a showing:

"(1) that a confession was elicited from him while he was under the influence of narcotics, and that such a confession was used adversely and unconstitutionally against him;

"(2) that he was not present at all stages of the proceedings as required by law; and

"(3) that he was not represented by counsel at all stages of the proceedings." [1]

In its opinion filed subsequent to the evidentiary hearing the District Court characterized the issues raised by Craig thus: "With the exception of two, his [Craig's] numerous objections refer to trial matters not presenting constitutional questions." [2] Two of the three issues which the District Court had isolated for attention at the evidentiary hearing—whether Craig was present at all stages of the proceedings and whether Craig had the adequate representation of counsel—were never disposed of in the District Court's opinion. Of the two problems with which the opinion dealt—involuntary confession and double jeopardy—only the former had been included among the three points for consideration at the evidentiary hearing.

■ The thirty-six issues raised by Craig in his application may be classified in the following manner: Nineteen [3] are

---

1. The appellee herein, the Commonwealth of Pennsylvania, in a paper entitled "Motion Setting Scope of Appeal," received and filed by this court on October 22, 1964, argues that the consideration of Craig's appeal be limited to the three subjects outlined by the District Court. The motion will be denied for there are sufficient reasons for not limiting our review of the record to the three issues isolated by the District Court:

(a) Contrary to the Commonwealth's position, there is ample evidence to show both Craig's disapproval of the limitation on the issues to be examined and his attempt to introduce other issues at the hearing.

(b) At the evidentiary hearing evidence was introduced which relates to issues beyond those outlined by the District Judge.

(c) The District Judge, himself, chose not to limit his consideration of Craig's application to the three issues.

(d) A Court of Appeals is not limited only to a review of issues determined by the District Court. All issues properly raised below are reviewable on appeal. See United States v. Curtiss-Wright

Corp., 299 U.S. 304, 330, 57 S.Ct. 216, 81 L.Ed. 255 (1936); In re Linda Coal & Supply Co., 255 F.2d 653, 656 (3 Cir. 1958).

2. United States ex rel. Craig v. Maroney, 230 F.Supp. 391, 392 (W.D.Pa.1964).

3. In the order of Craig's presentation, these nineteen issues may be summarized thus:

No. 3—The trial court erred in admitting photographs of the deceased which were highly prejudicial and inflammatory.

No. 4—The trial court erred in admitting a "murder-prone theory" newspaper clipping found on Craig's person.

No. 6—The trial court erred in submitting to the jury the question of whether there was sufficient evidence to establish first degree murder.

No. 7—The verdict was against the weight of the evidence.

No. 8—On the basis of the testimony concerning the weather and distance conditions on the fatal evening, the trial court erred in charging the jury that it could draw certain conclusions about

clearly of a non-constitutional nature and thus are not cognizable via habeas corpus. Even if these alleged errors were shown to be meritorious and were thus to rise in their aggregate to the level of a due process issue,[4] it appears that Craig never made such an argument to the state courts. The remaining seventeen issues do sound in terms of constitutional violations, but twelve[5] are of insuffi-

---

the ability of a witness to observe the outdoor happenings of that evening.

Nos. 9 through 15—The trial court erred in incorporating a variety of direct quotations from the testimony, without comment or qualification, in its charge to the jury.

No. 20—It was error to permit the prosecution's attempts to impeach appellant's testimony and character.

No. 21—The trial court erred in making derogatory comments concerning Craig in its opinion denying his motion to vacate the judgment of conviction, with alleged intent to prejudice him in subsequent appellate proceedings.

No. 22—It was error for the trial court to have asked a witness for the state repeated leading questions which elicited prejudicial and inflammatory answers.

No. 24—The trial court erred in admitting into evidence a shotgun, certain shells, shotgun wadding, and an automobile registration card, without proper foundation first laid therefor.

No. 25—The trial court erred in admitting into evidence the automobile in which the victim was found because it was not retained and impounded by the prosecution.

No. 30—Allegedly perjured testimony was admitted in Craig's trial.

No. 34—The trial court erred in admitting, on the issue of appropriate sentence, alleged inflammatory and prejudicial testimony.

4. See Pike v. Dickson, 323 F.2d 856, 860 (9 Cir. 1963), cert. denied, 377 U.S. 908, 84 S.Ct. 1164, 12 L.Ed.2d 179 (1964), and cases cited therein.

5. In the order of Craig's presentation, these twelve issues are summarized with dispository comments in parentheses thus:

No. 1—The trial court erred in not permitting defense counsel, on voir dire, to inquire into prospective jurors' beliefs concerning capital punishment, said responses to serve as a potential basis as a challenge for cause. (Belief in capital punishment would not constitute a basis for a challenge for cause by a defendant).

No. 2—The trial court erred in admitting into evidence Craig's previous criminal records. (Previous convictions were properly admitted on the issue of pun-ishment pursuant to procedure authorized under Pennsylvania's Split-verdict Act, 18 Pa.Stat.Ann. § 4701 (1963). Records showing a quashed indictment and a settled prosecution, in cases initiated by the complaint of the deceased victim against Craig, were properly admitted to show motive).

No. 16—Craig was denied counsel to pursue his direct appellate remedies. (Craig's own petition reveals that upon trial counsel's withdrawal from the case, Craig failed to initiate any appellate proceeding and failed to apply for new counsel).

No. 17—The federal constitution requires that a defendant have the right to appeal his conviction prior to sentencing. (This is clearly erroneous as a matter of law).

No. 18—Craig was illegally transferred from the county jail after his conviction, said transfer separating him from his own counsel and defense materials and thus violating his constitutional rights. (Craig raises here a matter of convenience and nothing more. He made no showing of permanent or purposeful separation from counsel and no showing that an inability to prosecute an appeal or seek collateral relief resulted).

No. 19—Craig was placed in double jeopardy when he was retired. (The District Judge properly rejected this argument, indicating, among other things, that it was Craig, himself, that had moved for the new trial).

No. 26—Craig was not present at all stages of the proceedings. (The record in no way supports this contention).

Nos. 27, 29—The Trial Judge did not formally recess the trial before leaving the bench, which caused the court reporter's absence for seven minutes while testimony was being taken, resulting in an incomplete record on a key matter. (The record disclosed that formal recess was taken, and when the court reporter's absence was noted the trial judge immediately remedied the situation by asking counsel to re-examine the witness on the points that had been raised when the reporter was absent).

No. 28—Appellant was prejudiced and denied due process by the appointment of an attorney whose secretary was the wife of the "prosecuting state policeman."

cient merit to warrant textual discussion. The remaining five [6] issues raised in Craig's application to the District Court crystallize into two weighty questions for our present consideration—(1) whether the introduction of Craig's confession at his trial was violative of due process and (2) whether the fruits of an illegal search and seizure were admitted into evidence also violating Craig's right to due process?

—I—

■ A brief statement of the relevant facts is set forth below.[7] Certain of them will be later emphasized and sup-

---

(No particular prejudice was alleged or demonstrated).

No. 35—Appellant was denied information concerning the personnel of the grand jury, the identity of witnesses before it, and their testimony. (Some of this material is a matter of public record of the state court. As to testimony before the grand jury, there is no evidence that Craig applied to the state court showing cause for such disclosure).

No. 36—Craig sets forth a plethora of complaints against actions of the Butler County Judge, his trial counsel, various Butler County officials and the newspapers, local to the scene of his trial, which he contends rendered invalid his conviction on which he is now serving a sentence of life imprisonment. He charges that the conduct of each and all separately and together thwarted a fair trial guaranteed to him under the Constitution of the United States. (Craig's complaints arise chiefly out of an interruption of his first trial on June 6, 1960, caused by his appearance in the courtroom so influenced by the use of barbiturates that he was unfit to defend himself. His trial was necessarily halted until he regained his faculties. It was resumed two days later and resulted in his conviction. Craig asserts that the drugs were dispensed without prescription to the inmates of the jail, and from the commencement of his incarceration there, December 29, 1959, to the time of his trial in June 1960, he was able to accumulate 500 one-half grain tablets of phenobarbital. As a result of the disclosure in the court, an investigation followed, the details of which found their way into the newspapers. A new trial was awarded to Craig because of the possibility that prejudice might have grown out of the events. The new trial took place approximately three months later —September 20–28, 1960. Many of the charges of bias and prejudice against the Butler County Trial Judge grew out of statements made in an opinion denying Craig's application for arrest of judgment, filed, of course, *after* the verdict in his second trial. The attack upon trial counsel is centered upon two character

witnesses being excused from testifying. Why this was done was left to conjecture, but it may be speculated reasonably that they were excused because they would not have been qualified or have been helpful. All of the conglomeration of complaints under ground No. 36 have been reviewed but they fail to disclose a single allegation of substance which could form the basis of a charge or from which an inference could be drawn that either the Butler County Judge or trial counsel was guilty of conduct which violated or contributed to a violation of Craig's constitutional rights. His charges that the officials of Butler County and the newspapers conspired to interfere with or prejudice his fair trial are nothing more than unsupported self serving declarations and it is apparent that this did not occur. The most that can be derived from Craig's imputations is because there was an irrregularity in the dispensation of barbiturates at the county jail of which he concededly took more than advantage, that irregularity mitigated his offense and rendered his trial invalid).

6. In the order of Craig's presentation, these five issues may be summarized thus:

Nos. 5, 23, 33—Craig was subjected to physical and mental torture at the hands of the police, his family was abused, he was told his family would continue to be harassed, and in this atmosphere a confession was extracted from him.

No. 31—Craig's arrest was illegal.

No. 32—Evidence procured by an illegal search and seizure was admitted at Craig's trial.

7. On Saturday, December 26, 1959, one John Nellis met death by shotgun blast at close range. The body was discovered by a constable in the automobile of the deceased on the morning of Sunday, December 27th. The petitioner, Craig, was arrested by the state police during the afternoon of the 27th. Craig's arrest was based on information given by the constable that Craig had been carrying a gun in his car, and on the conclusion of the police that Craig had a motive for revenge emanating from ill-feeling and threats between him and Nellis, the origin

plemented when necessary to maintain clarity in the forthcoming discussion of the issues in this case.

Craig sets forth four grounds upon which he claims his confession should have been rendered inadmissible. Initially, Craig argues that the physical and psychological pressure of the police, including extensive questioning for long periods of time, the influence of narcotics consumed while he was detained by the police, his despondency and resultant suicide attempt, all created an atmosphere in which his will was overborne and his confession coerced. The District Court dealt with the conflict in testimony on this issue and found that the evidence would not sustain Craig's allegation of physical and psychological pressure. The District Judge also found that evidence was lacking to show that Craig's confession was influenced by narcotics. If narcotics were in fact consumed during the first days of his detention, we do not see it reflected in any portion of the record apart from his statements thereof. As to the charge that the confession was extracted from Craig at a point of time almost immediately subsequent to the suicide attempt when he was in a weakened condition, the District Court concluded that he had

---

of which admittedly dated back at least a year and a half. No other investigation was made prior to Craig's arrest.

That same afternoon a search without a warrant was made of the Craig home, and at that time a shotgun, which was admitted into evidence at the trial as the alleged murder weapon, was seized. Mrs. Craig who was home at the time of the search claims that it was made without her permission. The state, in its answer to Craig's petition, justifies its warrantless search on the grounds that "a warrant was issued as soon as possible." At least one other susbequent search was made at which time certain shells, admitted at the trial, were seized.

Upon Craig's arrival at state police headquarters, as testified to by the police, he was stripped of all his clothing and all his possessions were confiscated. Contrary this, Craig claims he had hidden the narcotic "peyote" in one of his socks, and was under its influence at the time he offered his confession five days hence. Craig also claims he confessed while under the influence of barbiturates received during his detention.

For shortly less than forty-eight hours Craig was detained and questioned. The length of these interrogations and the treatment accorded the petitioner during this period of time is disputed. On Tuesday, December 29, 1959, Craig was taken before an alderman, charged with the murder of Nellis, and was informed of his rights. He retained an attorney who conferred with him on Wednesday, December 30th. At this time Craig was advised to give no statement to the police.

On Thursday night, December 31st, in an attempt at suicide, Craig broke his eye glasses and cut a wrist. He was taken to a hospital, treated, and returned to jail early Friday morning, January 1, 1960. That same morning he was visited by the authorities, but made no statement. His attempt to locate his attorney was unsuccessful. Later that day he dictated to the State Police Sergeant in charge, in the presence of the District Attorney, a confession which was introduced at his trial. The testimony is in conflict as to whether he was again informed by the police of his right to consult with his attorney prior to the dictation of the statement. It is clear, however, that the confession was sworn to before the same alderman who had previously conducted the preliminary examination during which Craig was charged with the murder.

Craig's first trial in June, 1960 was tainted by his appearance in court under the influence of barbiturates which he had accumulated while in prison and had consumed at the time of his trial. A new trial was granted and took place on September 20–28, 1960, at which time he was found guilty and sentenced to life imprisonment. During his trial, Craig admitted his presence at the scene of the murder in a highly inebriated condition, explained that he did not know what he was doing, that he had no awareness of the presence of the deceased, and that he was not cognizant of firing a weapon at that time.

No timely appeal was taken from his conviction, and although certain informal petitions were presented to the Supreme Court of Pennsylvania, all of which were denied, and a petition for certiorari taken to the Supreme Court, also denied, Craig has apparently not applied for a writ of habeas corpus in the state courts; instead his petition has been filed in the federal court, the appeal from its denial being presently before us.

received only minor first aid, permitting his release from the hospital in a matter of a few hours, and that his actions prior to and during the dictation of the confession indicated an adequate physical capacity and mental alertness. The District Judge's opinion reflects a careful weighing of the evidence relating to the above allegations, and is amply supported by the record. We, therefore, find no reason to overturn the ruling on this initial issue raised by Craig.

Craig's second contention is that his confession was a reaction to his fear for the safety of his family, a fear based on their being abused by the police. Craig also alleged that his awareness that a friend, Dave Duffy, innocent of the crime, was also detained by the police, aided in forcing the confession. As to this second contention of Craig's the District Court found that the state of apprehension claimed by him is not borne out by the record, no circumstances appearing which would indicate the existence of such a disturbed state of mind at the time of the taking of the confession.

Craig relies on Rogers v. Richmond [8] as support for his contention. In Rogers a new trial was ordered on the ground that the trial court had applied a constitutionally impermissible standard in determining the admissibility of a confession. The defendant in Rogers confessed shortly after being told his arthritic wife would be brought down to headquarters if a statement were not given. Craig alleges a parallel situation in this case, a position in which we cannot acquiesce. First of all, the Rogers court was never faced with the question of the application of a proper constitutional standard to a set of given facts. The reversal in Rogers was based on the impropriety of the standard, itself. The trial court had considered the trustworthiness of the resultant confession rather than limiting its consideration to the question of whether the behavior of the police was such as could reasonably be expected to have overborne the defendant's will. In the case at hand, no issue is made of the constitutional standard applied in measuring and weighing the factual allegations raised by Craig. In this case there is evidence that the District Attorney informed Craig that his wife would be subpoenaed for the trial and that his wife and children would be brought in to testify against him. The record also indicates that the police told Craig that statements had been taken from his family concerning the events on account of which he was being detained. The District Court in its examination of the record, as reflected in its opinion, notes these facts, but is unable to find any relationship between Craig's awareness of them and his final decision to confess. Our examination of the record indicates that applying the appropriate constitutional standards to the evidence, there is no other conclusion to be reached, and as our subsequent discussion will indicate, Craig's confession was peculiarly independent of the circumstances he alleges taint that incriminatory statement.

■ The third ground upon which Craig relies in attacking the admissibility of his confession is the alleged illegal arrest from which it flows.[9] We neither have the benefit of an analysis by the District Court on the issue of illegal arrest, nor do we find it clear that prob-

---

8. 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961).

9. Craig also argues that his alleged illegal arrest, in and of itself, suffices to void his conviction. Assuming arguendo the illegality of the arrest, the law is well settled that "due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards." The power of a court to try a person for crime is not impaired by the fact that a party has been brought before the court by illegal means. Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); United States v. Fullam, 224 F. Supp. 492 (E.D.Pa.1963); Com. ex rel. Di Dio v. Baldi, 176 Pa.Super. 119, 106 A.2d 910 (1954).

able cause, a prerequisite to the legality of the actions taken by the police, existed for the arrest. However, we need only reach that issue if we first conclude that the arrest, *if illegal,* would have ruled out the admissibility of Craig's confession.

■ The leading case concerning the effect of an illegal arrest on the admissibility of a subsequent confession is Wong Sun v. United States.[10] There the determinative issue was "whether granting establishment of the primary illegality [the illegal arrest], the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."[11] It was also made clear that the concept of the fruit of the illegality invited no logical distinction between physical and verbal evidence. In Wong Sun the admission of four items into evidence was contested, all but one being found to have been a fruit of an illegal arrest. As to that remaining one, an unsigned confession, the Supreme Court found it admissible. Wong Sun had been released on his own recognizance after a lawful arraignment, and had returned voluntarily several days later to make the challenged statement. As to this confession, the Supreme Court ruled "that the connection between the arrest and the statement had 'become so attenuated as to dissipate the taint.' "[12] Does Craig's confession fall into this exception as outlined in Wong Sun?

There are two factors which seem to be of major significance in determining the relationship between an illegal arrest and, as here, the subsequent confession:

(a) the proximity of an initial illegal custodial act to the procurement of the confession; and

(b) the intervention of other circumstances subsequent to an illegal arrest which provide a cause so unrelated to that initial illegality that the acquired evidence may not reasonably be said to have been directly derived from, and thereby tainted by, that illegal arrest.

■ The relevant facts from which the above two elements must emerge in the instant case are the following: The murder victim was killed during the night of Saturday, December 26, 1959. On the afternoon of Sunday, the 27th, Craig was taken into custody by the Pennsylvania State Police and was detained approximately forty-eight hours before he was taken to an alderman for a preliminary examination on Tuesday, December 29, 1959. At this time Craig was apprised of his right to remain silent and to have an attorney appointed to represent him. No incriminating statement had been received by the police before the preliminary examination. Craig was in touch with an attorney prior to this time and spoke with him on Wednesday, the 30th. The record shows that at this meeting Craig was advised unequivocally to say nothing at all to the police. On the evening of Thursday, December 31, 1959, the aforementioned suicide was attempted, but as the District Court found, Craig was in adequate physical and mental condition to be returned to his cell on the morning of Friday, January 1, 1960. Both the District Attorney and the Sergeant of the Pennsylvania State Police, involved in the case, visited Craig on the morning of the first of January, at which time he would give no statement, and stated that his attorney had directed him to remain silent. Later that day the alleged illegal confession was procured.

Thus, these facts reflect: that five full days had elapsed from the time of arrest to the time the confession was given; that no confession was given or state-

---

10. 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963).

11. Id. at 488, 83 S.Ct. at 417, 9 L.Ed.2d 441, quoting from Maguire, Evidence of Guilt 221 (1959).

12. Id. at 491, 83 S.Ct. at 419, 9 L.Ed.2d 441, quoting from Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

ments made prior to Craig's appearance before the alderman at which time he was advised of his rights; and that Craig spoke with his attorney prior to his confession and was given specific advice to give no statement.

The significant time lapse together with the above-outlined intervening circumstances lead us to the conclusion that Craig's confession was sufficiently independent of the arrest to avoid the taint of that alleged illegality.

Our conclusion is buttressed by reported cases reflective of circumstances where the independent will of the detained party was less clear than that which exists here. Yet the exception articulated by the Supreme Court in Wong Sun has been applied to validate incriminatory statements in such circumstances.[13] We are of the view, therefore, that Craig's allegedly illegal arrest does not invalidate his subsequent incriminatory statements.

Though we have held that the alleged illegal arrest could not itself have tainted Craig's confession, a fourth ground is urged as a basis for ruling the confession inadmissible. Under the authority of Escobedo v. State of Illinois,[14] it is urged that the police acted unconstitutionally in extracting Craig's confession without informing him of his right to consult with an attorney.

Again the facts are crucial to the disposition of this issue. At the time Craig was taken to an alderman, forty-eight hours after being arrested, he was informed of his right to remain silent and of his right to have counsel. Counsel was retained for him and on Wednesday, December 30, 1959, two days prior to the confession, counsel advised Craig to say nothing. Craig, however, focuses on the sequence of events occurring on Friday, January 1, 1960, as sustaining his position that his right to have the benefit of counsel as enunciated in Escobedo was violated.

The record, though far from clear, reflects the following events of January 1, 1960: Craig was returned to his cell from the hospital during the early morning hours following his alleged suicide attempt of the previous evening. Around 9:00 a. m., on the morning of Friday, the 1st, the Sergeant in charge of the case dropped by to speak with Craig and attempted to interrogate him. Craig himself testified that he told the Sergeant that he would not answer any questions and that his attorney had told him not to make any statements. Later that morning, Craig apparently requested the Warden of the Butler County Correctional Institution to communicate with his attorney and tell him to come to the county jail to see him. The Warden was unable to reach the attorney, and Craig was so informed. Some time later that day the District Attorney saw Craig and the Warden testified that it was after this meeting that Craig informed him (the Warden) that he would make a statement, but only in the presence of the Sergeant in charge of the case. Both the Warden and the Sergeant indicated that a call was placed by the Warden to the police barracks and the Sergeant was, in turn, contacted. Craig contradicted this by saying he never requested the Sergeant's presence. He indicated that he was not anxious to make a statement. Be that as it may, both the District Attorney and the Sergeant were in Craig's presence when the confession was given.

The Sergeant testified at the hearing before the District Judge that immediately preceding the transcription of the incriminating statement he reminded

13. Rogers v. United States, 330 F.2d 535, 540–542 (5 Cir. 1964); Burke v. United States, 328 F.2d 399, 402 (1 Cir. 1964); State v. Jackson, 43 N.J. 148, 168–170, 203 A.2d 1 (1964). See also Killough v. United States, 114 U.S.App.D.C. 305, 315 F.2d 241 (D.C.Cir.1962). For a comprehensive yet succinct discussion of the problem see, Note, "Criminal Procedure— Fourth Amendment Vitality of Wong Sun," 19 Rutgers L.Rev. 140 (1964).

14. 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977 (June 22, 1964). The judgment of the District Court herein was filed May 28, 1964.

Craig that he had retained counsel who should tell him what to do and that Craig replied that he didn't need his attorney. However, the Sergeant's testimony covering the same matter at the trial of the case is ambiguous. It is not clear from that testimony whether Craig was reminded of his right to have the advice of counsel. The District Attorney, himself, testified that nobody asked Craig whether he wanted his attorney present. In fact, the District Attorney testified that he did not send for Craig's attorney for he was aware that the attorney probably would have told Craig not to make a statement. Craig stated that he was not advised of his right to have his attorney immediately preceding the taking of the incriminating statement. However, he did swear to that statement before the same alderman who had previously informed him of his constitutional rights.

■ Assuming arguendo that Craig did not send for the Sergeant in charge and did not request the presence of the authorities in order to make a statement, and assuming further that Craig was not again told of his right to consult with an attorney, do these facts invalidate the confession that was in fact made, under the doctrine enunciated in Escobedo v. State of Illinois? In Escobedo, the defendant's attorney, who had consulted with the defendant prior to the questioning there in issue, applied to the police authorities for permission to join his client in the interrogation room. Simultaneously, the defendant was vigorously demanding that he be allowed to see his attorney. Both requests were refused by the police. The confession that flowed immediately thereafter was invalidated by the Supreme Court on the ground that where a police investigation has shifted from its investigatory to its accusatory phase and has thus begun to focus on a particular suspect in police custody, the accused, who has been refused an opportunity to consult with

counsel and who has not been warned of his right to remain silent, has been denied the assistance of counsel in violation of the sixth and fourteenth amendments. In Escobedo, the accused knew of his rights, demanded them, and was refused. But, even if the accused had not previously consulted with an attorney and made no request to so consult at the time of the interrogation, the police must apprise the accused of his rights prior to eliciting a confession.[15] Knowledge of them and waiver thereof by silence will not be presumed when basic constitutional privileges are involved.

■ None of the aforementioned circumstances, however, characterizes the fact pattern present in this case. The record is clear that Craig's request for his attorney on the morning of January 1st was not refused, the Warden's attempt at communication with his attorney merely being unsuccessful. His incriminating statement that followed was contrary to the explicit advice of his attorney and contrary to his conduct earlier that same day when he refused to participate in an interrogation. Thus, this is not a case of abusive police treatment in denying a request that the assistance of counsel be provided. Neither is this a case of an ignorant accused being prevented from exercising his rights by the silence of the police. The fact that the police may not have refreshed Craig's memory that he had an attorney and could consult with him prior to making a statement carries no weight here. It is clear beyond a doubt both that Craig knew of his right to have an attorney for consultation and that he knew no statement had to be given to the police. As discussed above, the record reflects no other pressure inhibiting Craig's freedom of choice. Though not express, his decision to proceed without counsel was unfettered, intelligent, and unequivocal. The peculiar facts of this case do constitute the waiver of a right

---

15. United States ex rel. Russo and Bisignano v. New Jersey, Nos. 14833, 14869 (3 Cir., May 20, 1965). For a thorough discussion of the impact of Escobedo on police practices see, Note, "Escobedo in the Courts: May Anything You Say be Held Against You?," 19 Rutgers L.Rev. 111 (1964).

previously secured. We are, therefore, in agreement with the District Court that there was no denial of Craig's right to counsel. His merely was a voluntary statement outside the permission of counsel. The principle of Escobedo v. State of Illinois has not been violated by the admission of Craig's confession into evidence.

—II—

The other weighty question for our consideration is whether the introduction into evidence of the alleged murder weapon had its genesis in an illegal search and seizure and thus was inadmissible in the Pennsylvania Courts under Mapp v. Ohio.[16] This issue was excluded from consideration by the District Court after the preliminary hearing, although some testimony related to it can be found in the record as it was admitted to shed light on the voluntariness of the confession discussed above.

The search of the Craig home was without a warrant, and searches in situations where warrants have not been issued can only be justified in exceptional circumstances. The testimony introduced at the evidentiary hearing before the District Court on the issue of probable cause to search, together with the testimony in the trial record on that issue, does not clearly indicate that probable cause did in fact exist for the warrantless search. For such probable cause to have existed, one of the three factual exceptions to the necessity for having a warrant must have suggested itself to the police:[17] (1) a search incident to a lawful arrest; or (2) an emergency situation, such as one where it is necessary to immediately seize evidence to prevent the escape of a criminal or the destruction of the evidence; or (3) consent by the defendant or one who exercises a parallel dominion over the premises searched. The search of the Craig home was not proximately related to Craig's arrest so as to be incident thereto; escape of the suspect or destruction of evidence was not reflected within the ambit of facts of which the police were aware; and the affidavit of Mrs. Craig, even when counterbalanced by police testimony, casts considerable doubt on whether she consented to the search of the premises. However, we need only dispose of the question of probable cause if we first conclude that its absence would be dispositive of Craig's appeal favorably to him. Craig was sentenced on September 28, 1960 to serve a life term, and had forty-five days under Pennsylvania law[18] to notice an appeal therefrom. This was not done and Craig's sentence thereby became final prior to June 19, 1961, the date of the decision in Mapp v. Ohio. Only if Mapp were to be applied retroactively to judgments of conviction final as of June 19, 1961 would we reach the probable cause issue presented here. The Supreme Court has recently decided this issue adverse to those finally convicted prior to the Mapp ruling. It concluded that no persuasive policy justification existed for Mapp's retroactive application—the fourth amendment right to be free from an unreasonable search and seizure is the personal right which Mapp vindicated, whereas the rule of exclusion, although a personal right in and of itself, is the method of vindication, rather than a self-operative privilege.[19] Furthermore, it is apparent that Pennsylvania's criminal procedure rule in this matter does not go further than that enunciated by the United States Supreme Court.[20] Thus, Craig may not assert a remedy under Mapp v. Ohio.

16. 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081 (1964).

17. See McDonald v. United States, 335 U.S. 451, 453–455, 69 S.Ct. 691, 93 L.Ed. 153 (1948); Judd v. United States, 89 U.S. App.D.C. 64, 190 F.2d 649 (D.C.Cir. 1951).

18. Pa.Stat.Ann. tit. 12, § 1136 (1963).

19. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

20. Ensor v. Cummings, 416 Pa. 510, 513, 207 A.2d 230, 231 (1965); Commonwealth ex rel. Wilson v. Rundle, 412 Pa. 109, 122, 194 A.2d 143, 150 (1963).

## —III—

As properly set forth in the District Court's opinion,[21] the denial of Craig's petition for habeas corpus on its merits remains permissible even though state remedies may not have been exhausted.[22] Therefore, the judgment of the United States District Court for the Western District of Pennsylvania will be affirmed.

21. Commonwealth ex rel. Craig v. Maroney, supra note 2, at 398.

22. In re Ernst's Petition, 294 F.2d 556, 561–562 (3 Cir. 1961).